**Walter J.D. MOFFETT, Plaintiff-Appellant,**

v.

**Roland E. McCAULEY, John R. Gagnon, and Ronald L. Paul, Defendants-Appellees.**

No. 82–1347.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1983.

Decided Jan. 5, 1984.

---

Kenneth A. Kroot, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Charles D. Hoornstra, Deputy Atty. Gen., Madison, Wis., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Walter J.D. Moffett, plaintiff-appellant, filed an action for damages pursuant to 42 U.S.C. § 1983 against defendants Ronald L. Paul, Roland E. McCauley, and John R. Gagnon. Mr. Moffett, a prisoner at the Fox Lake Correctional Institution at Fox Lake, Wisconsin, alleged that he was subjected to an unconstitutionally abusive strip search on October 25, 1975, by defendant Paul, a correctional officer at Fox Lake. Defendant Gagnon was the warden at Fox Lake, and defendant McCauley was the acting administrator of the Division of Corrections of the Wisconsin Department of Health and Social Services. The case went to trial on January 13, 1982. All three defendants received favorable verdicts: the district court granted directed verdicts for defendants Gagnon and McCauley, and the jury returned a verdict in defendant Paul's favor.

Moffett no longer disputes the constitutionality of the decision to conduct the strip search. Rather, he contends that the manner in which it was conducted was unconstitutional. Moffett comes to this court to appeal the district court's refusal to admit into evidence a prison investigation report containing an account of the strip search, claiming that it is admissible under the

residual exception to the hearsay rule, Federal Rule of Evidence 803(24), and under Federal Rule of Evidence 801(d)(2)(B), as an admission. Moffett also claims the district court erroneously granted defendant Gagnon's motion for a directed verdict. Moffett does not appeal the directed verdict granted defendant McCauley.

## I.

The strip search in question took place in the conference room in the main administration building at the Fox Lake Correctional Institute. Defendant Paul, accompanied by Officer Skindzelewski, conducted the search. Paul ordered Moffett to take off all of his clothes and to bend over and spread his buttocks. Moffett claims that Paul used street terms that Moffett found offensive, and that after Moffett had spread his buttocks once and straightened up, Paul demanded he do it a second time. Paul denies using the street term attributed to him by Moffett, and asserts that Moffett did not do as he was told the first time.

As the defendants' brief described the unlikely and unfortunate set of circumstances, sometime after the strip search, but before Moffett was fully clothed, "two nuns of all things" appeared at the door. The witnesses are in dispute as to whether the nuns entered the conference room and, if so, Moffett's stage of dress at the time. Moffett asserts that the nuns saw him completely nude, and that Paul laughed degradingly. There is no suggestion that the nuns' appearance at the conference room was anything but accidental.

After Moffett filed a complaint regarding the strip search, prison officials conducted an investigation. Moffett sought to have the resulting report admitted into evidence because it conflicts with Paul's trial testimony with respect to two factual details. First, the report states that, after Officer Skindzelewski advised Moffett to comply with Paul's order to bend over and spread his buttocks, "Mr. Moffett then turned around, bent over and spread his cheeks part way. Mr. Paul again instructed Mr. Moffett to bend over and spread his cheeks." Moffett claims that this contradicts Paul's testimony that Moffett did not spread his cheeks at all the first time he bent over. Second, the report states that when the two nuns opened the door, "Mr. Paul was shocked and surprized [sic] that the two women would be back by that room without staff accompaniment. Mr. Paul immediately moved to the door and closed it; he then instructed the women to go back to Control." Moffett claims that this contradicts Paul's testimony that he never saw the nuns while he was in the conference room.

## II.

Moffett first argues that the district court should have admitted the prison report under Federal Rule of Evidence 803(24), the residual exception to the hearsay rule. The court rejected the report on the ground that it did not possess the circumstantial guarantees of trustworthiness required by Rule 803(24) because the court did not "know enough about the preparation of that document to have any confidence in [it]—." We agree with Moffett that the court erred in refusing to admit the report on this ground, but find that any error the court committed was harmless.

There are five requirements for admission under Rule 803(24): (1) trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice. The first requirement dictates that evidence must, when compared with evidence admissible under other exceptions to the hearsay rule, have " '*equivalent* circumstantial guarantees of trustworthiness.' " *Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir.1979) (quoting Rules 803(24) and 804(b)(5)) (emphasis added in *Huff*). The district court enjoys a "considerable measure of discretion" in deciding whether to admit hearsay evidence under Rule 803(24). *Id.* at 291. However, "[w]here evidence complies with the spirit, if not the latter [sic], of several exceptions, admissibility is appropriate under the residual exception." *United States v. McPartlin*, 595 F.2d 1321, 1350 (7th Cir.), *cert. denied,* 444 U.S.

833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Moffett argues that the report falls nearly within the terms of the business records exception. Fed.R.Evid. 803(6). We agree.

This court considered a similar situation in *Stone v. Morris,* 546 F.2d 730 (7th Cir. 1976), and admitted the evidence in question under the business records exception. In *Stone,* a prisoner brought a civil rights suit under 42 U.S.C. § 1983 against various prison officials. After a jury verdict for the defendants, the plaintiff appealed the district court's refusal to admit into evidence a memorandum written by a correctional counselor at the prison to a staff psychiatrist. The memorandum purportedly was an account of the events leading to the plaintiff's lawsuit. The memorandum corroborated one of the factual allegations made by the plaintiff and denied by the defendant. The district court excluded the memorandum as inadmissible hearsay.

We reversed, holding that the memorandum was admissible under the business records exception. We explained that the failure of the memorandum to reveal the source of the information affected the weight to be accorded the memorandum by the trier of fact, not the memorandum's admissibility. *Stone,* 546 F.2d at 738.

The report Moffett seeks to admit details events surrounding his strip search, and was prepared just over two months following the incident. Like the memorandum in *Stone,* the report does not list the sources for the information it contains, but it was made by and on behalf of prison officials. The warden testified that it was the regular procedure of the prison records office to compile such reports whenever a suit is filed against the prison or its officials.

Since the report was prepared on behalf of the defendants, it is reasonable to infer that the investigators who prepared the report relied on prison officials with firsthand knowledge of the incident for infor-mation. The prison official who prepared the report had a business duty and a public obligation to be accurate. The warden's willingness to sign an affidavit attached to the report saying that its contents were true to the best of his knowledge attests to the warden's confidence in the mode of preparation. It is clear that the report does have circumstantial guarantees of trustworthiness sufficient to meet the trustworthiness requirement of Rule 803(24). Under these circumstances, we think that the lack of more specific information concerning the preparation of the report more properly goes to its weight than to its admissibility.[1]

Defendants argue, however, that even if the report is sufficiently trustworthy to fit within Rule 803(24), it should not be admitted because it fails to meet other requirements of Rule 803(24). More specifically, defendants allege that Moffett failed to fulfill the notice requirement, that the report is not sufficiently probative to justify admission, and that admitting the report would not serve the interests of justice. While these alternative grounds for excluding the report may have some merit, we need not evaluate them because we find that the district court's error in excluding the report solely on the basis of lack of trustworthiness was harmless.

■ Moffett seeks to admit the report because the account of the search contained in the report conflicts with the account of the search that Paul gave during trial. Even if the jury accepted the report and rejected Paul's testimony on the two factual discrepancies, however, there exists no reasonable likelihood that admission of the report would have affected the jury's verdict. *Cf. Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820, 823 (5th Cir.1980); *United States v. Ledesma,* 632 F.2d 670, 674 (7th Cir.), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296

---

1. Ordinarily, courts refuse to admit reports made in preparation for litigation, holding that they lack sufficient guarantees of trustworthiness to be excepted from the hearsay rule because they are not made in the regular course of business. *See Palmer v. Hoffman,* 318 U.S.
109, 111, 63 S.Ct. 477, 479, 87 L.Ed. 645 (1943). Moffett correctly points out that this rule does not apply where, as here, the evidence is offered against the party for whom it was prepared. *See Leon v. Penn Central Co.,* 428 F.2d 528, 530 (7th Cir.1970).

(1980); Fed.R.Evid. 103(a). First, the facts in the report do not depict a scene wherein Moffett's constitutional rights were violated. Second, the report does not, as Moffett suggests, cast significant doubt on Paul's credibility. And finally, the report actually contradicts Moffett's testimony—and contradicts it with respect to important factual details.

The inconsistencies between Paul's testimony and the report involve only two minor details that have no bearing on the constitutionality of the search: (1) whether Moffett failed to spread the cheeks of his buttocks on his first bend, or whether he spread them partially; and (2) whether Paul saw the nuns while he was in the conference room. These factual questions would hardly detain a jury concerned with whether an admittedly justified strip search was conducted in a constitutional manner. First, Moffett never claims that the second bend was unnecessary and that Paul required it merely to humiliate and abuse Moffett. Second, whether Paul saw the nuns while he was in the conference room sheds no light on whether the nuns saw Moffett unclothed and whether Paul's demeanor during the search was abusive. In fact, the report suggests that upon seeing the nuns, Paul took immediate action to protect Moffett's privacy: "Mr. Paul was shocked and surprised [sic] that two women would be back by that room without staff accompaniment. Mr. Paul immediately moved to the door and closed it; he then instructed the women to go back to Control."

Moffett contends, however, that the discrepancies between the report and Paul's testimony undercut Paul's credibility and thus may convince the jury that Moffett's description of the overall ambience of the search, including such details as whether Paul laughed when the nuns appeared, is correct. It is difficult to see, however, how discrepancies between the report and Paul's testimony with respect to two minor factual details cast significant doubt on Paul's credibility—especially since we do not know who supplied the information for the report. The report is not sufficiently probative with respect to Paul's credibility that admission would have been likely to affect the jury's verdict.[2]

The harmlessness of any error in excluding the report is underscored by the report's contradictions with Moffett's own version of what happened. Moffett testified at trial that the two nuns entered the conference room, that he had eye contact with them while he was completely nude, and that the nuns laughed in embarrassment while Paul laughed degradingly. Curiously, the report Moffett seeks to admit specifically states that the nuns did *not* enter, and that Moffett was *not* nude:

> In checking with one of the two civilian women mentioned regarding this incident, she stated that they were advised by Control to proceed to the Staff Conference Room. They opened the door and were immediately advised that the room was being used and therefore *did not enter.* She recalls a man in the room but because of the brevity of the incident, *she cannot recall much more detail other than that they were told to return to Control.*

(Emphasis added.) As Moffett emphasizes, this report was completed not much more than two months after the search. If the nuns had entered the conference room, established eye contact with a naked man, and laughed in embarrassment, surely they

---

2. Paul also argues that the report provides merely cumulative evidence on the question of his credibility, and that error in excluding it is therefore harmless. *See Japhe v. A–T–O, Inc.,* 481 F.2d 366, 371 (5th Cir.1973); 1 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 103[06] at 103–61 (1982). Paul notes that his trial testimony and his deposition conflict on certain factual details, including whether he saw the nuns while he was in the conference room. The deposition was admitted into evidence and read to the jury, and these discrepancies were pointed out. Moffett responds that the discrepancies between Paul's trial testimony and his deposition put Paul's credibility in question, and that admission of the report is not merely cumulative in this context because it would have tipped the balance in weighing the credibility of the witnesses in favor of Moffett. Because the report has little, if any, probative value with respect to the question of Paul's credibility, we reject Moffett's contention.

would have remembered doing so. In fact, contrary to Moffett's testimony, the report explicitly states that Moffett was already partially dressed: "Mr. Moffett put on his T-shirt, shorts and pants and sat down and started to pull on his socks when the door opened and two women stood there." As Paul points out, "[Moffett's] desire to get this report to the jury is intriguing."

### III.

Moffett next argues that the report qualifies as an admission by a party opponent under Fed.R.Evid. 801(d)(2)(B). Moffett contends that since Gagnon, the prison warden and a party-opponent, signed an affidavit verifying that the report was accurate to the best of his knowledge, Gagnon's adoption of the report was sufficient to make it admissible against both Gagnon and Paul as nonhearsay for the truth of the matters asserted in it. We disagree. The report is inadmissible as an admission against Gagnon because it does not help establish Gagnon's liability, and it is inadmissible against Paul because Paul never manifested his belief in the truth of the report.

The defendants admit that Gagnon manifested his belief in the truth of the report, but maintain that it is not admissible as an admission against Gagnon because the report contains no facts that establish Gagnon's liability. Moffett argues that the report is admissible against Gagnon since it establishes a condition precedent to Gagnon's liability (*i.e.*, the report helps establish that Moffett's constitutional rights were violated). We agree with the defendants since, as we have already explained, the facts in the report do not depict a scene wherein Moffett's constitutional rights were violated.[3]

Moffett also contends that the report qualifies as an admission by Paul. Moffett alleges that the report was prepared on behalf of all the defendants, including Paul, and that adoption of the report by Gagnon therefore rendered the report an admission assertable not only against Gagnon, but against Paul as well. We disagree. Gagnon's adoption of the report can bind only Gagnon, not Paul. *See United States v. Fleming,* 594 F.2d 598 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); IV Wigmore on Evidence § 1076 at 155–56 (Chadbourn rev. 1972). Rule 801(d)(2)(B) clearly provides that the party against whom a statement is offered must have "manifested his adoption or belief in its truth." Moffett failed to show that Paul ever read the report or even knew of its existence, much less that he manifested a belief in its truth. That Paul's defense counsel may have authorized preparation of the report, or that another defendant adopted it, is insufficient to meet the explicit requirement of Rule 801(d)(2)(B) that the party-opponent himself manifest his belief in the truth of the statement—especially since the case against Gagnon differs from the case against Paul. The report, therefore, is hearsay as to Paul's liability, and inadmissible under Rule 801(d)(2)(B).

### IV.

Finally, Moffett argues that the district court incorrectly granted a directed verdict in favor of defendant Gagnon. Gagnon cannot be held liable if Moffett's constitutional rights were not violated. Since the jury found that they were not, and since we find no prejudicial error with the way the district court handled the trial, the issue of whether the court should have allowed Moffett's case against Gagnon to go to the jury is moot. The judgments in favor of Paul and Gagnon are affirmed.

---

**3.** We do not decide today whether the report would be admissible against Gagnon if the report did actually prove that Paul conducted an unconstitutionally abusive search.