**UNITED STATES of America, Appellee,**

v.

**Patricia "Patty" CREE, Appellant.**

**No. 84–2081.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1985.

Decided Dec. 4, 1985.

Rehearing and Rehearing En Banc
Denied March 5, 1986.

Maureen White Eagle, Devils Lake, N.D., for appellant.

Rodney S. Webb, U.S. Atty., Fargo, N.D., for appellee.

Before ROSS and BOWMAN, Circuit Judges, and OLIVER,* Senior District Judge.

BOWMAN, Circuit Judge.

This disturbing case involves the physical abuse of two young boys, Maurice Alberts,

---

* The HONORABLE JOHN W. OLIVER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

age four, and Phillip Alberts, age two. The defendant, Patricia Cree, appeals from a judgment of the District Court[1] entered upon her conviction by a jury of assault resulting in serious bodily injury. *See* 18 U.S.C. §§ 113(f), 1153.[2] We affirm.

In May 1983, Cree agreed at the request of Lavonne Alberts to care indefinitely for Alberts's sons. Cree previously had been a babysitter for the boys and knew them well. Maurice and Phillip moved into the home that Cree shared with Andrew Shaw. In June 1983, Cree was given custody of the boys.

On February 22, 1984, officials at the Fort Totten Early Childhood School, which Maurice attended, noticed a large, swollen bruise covering one of Maurice's hands. Two officials testified that when asked about the bruise, Maurice told them that Patty had done it. Upon examination, school officials also discovered marks on Maurice's legs. A note telling Cree that Maurice was complaining about his hand and that it may need to be examined was prepared by a school official and was delivered to Cree by the school's bus driver. Maurice did not attend school on February 23, 1984, but when he returned to school the next day, he had not been to a doctor.

On February 28, 1984, Cree took Phillip to a clinic in Devils Lake, North Dakota for treatment of a leg injury. Cree explained that although she really did not know how Phillip had been injured, she suspected that he had jumped or fallen while he was playing in his bedroom.[3] Dr. McBane, who initially examined Phillip on February 28, found that Phillip had a freshly fractured right femur. Dr. McBane also discovered that Phillip suffered from an untreated fractured clavicle, which he estimated to be two to four weeks old. Dr. McBane con-

cluded that the two fractures could not have occurred at the same time. Dr. McBane additionally observed swollen bruises on Phillip's brow and face, as well as lesions or linear bruises on Phillip's back. Phillip was admitted to the hospital for treatment on February 28 and, at the request of Dr. McBane, was examined that day by a surgeon, Dr. Montaniel.

Dr. Montaniel agreed with Dr. McBane's conclusions regarding the fractures of Phillip's femur and clavicle and treated those fractures. Upon examining Phillip, Dr. Montaniel also observed further injuries to Phillip: abrasions and bruises on both ears; a puncture wound in one ear; and welts or swelling on the back. Dr. Montaniel described many of these additional injuries as being ecchymotic, *i.e.,* swollen with blood. Based on the existence of multiple injuries and the appearance of the injuries, Dr. Montaniel testified that he was highly suspicious that Phillip was a battered child.

On February 29, 1984, a social worker took Maurice to the clinic. Dr. Jackson examined Maurice and found a very prominent bruise on the left side of his face; multiple healed scars, some linear and some circular, on his chest; extreme bruising, swelling, and tenderness of his left hand; multiple small scars that were healed on his arms; and multiple small scars, as well as scabs that were in different stages of healing, on his legs. Dr. Jackson noted that marks on Maurice's legs and buttocks were linear in nature. Dr. Jackson believed that the injuries to Maurice's legs were consistent with Maurice's statement during the examination that he had been hit with a belt. Dr. Jackson explained that the linear markings could have been caused by blows with a belt, while the sores with scabs could have been caused by the belt buckle taking out

1. The Honorable Paul Benson, Chief United States District Judge for the District of North Dakota.

2. Under 18 U.S.C. § 1153, federal jurisdiction as to the crime here specified is exclusive; defendant and the victims are Indians and the relevant incidents occurred on the Fort Totten Indian Reservation.

3. Cree claims that while she was in the kitchen doing dishes, Phillip and her two-year-old goddaughter, Alison, were playing in Phillip's bedroom. According to Cree, Alison came into the kitchen and told her that Phillip had jumped or fallen.

small pieces of flesh. Following this examination, Dr. Jackson filed a child protection form with the social services department to alert the department that Maurice might be a battered child. Dr. Jackson testified that in his opinion, Maurice was the victim of child abuse.

Cree's custody of the boys was terminated on February 29, 1984. Maurice was taken to the home of a new foster parent, Florentine Peltier. Phillip remained in the hospital.

On March 5, 1984, Dr. Eisenberg took over Phillip's hospital treatment. Dr. Eisenberg described Phillip's injuries in a manner consistent with the descriptions of Drs. McBane and Montaniel. Dr. Eisenberg also was concerned with Phillip's emotional condition; Dr. Eisenberg observed that Phillip seemed frightened of anyone who was dark skinned or native American. Dr. Eisenberg testified that he believed Phillip was suffering from battered child syndrome, a condition Dr. Eisenberg defined as "a collection of symptoms and presentations that indicate [the] child has been abused either on one occasion or several occasions...." Trial Transcript (Tr.) at 230.

At the request of FBI Special Agent Spencer Hellekson and Bureau of Indian Affairs Criminal Investigator Ken Morsette, a clinical social worker, Susan Chaussee, agreed to interview Maurice to see if Maurice could explain how Phillip and he had been injured. Three videotaped interviews were conducted in March 1984. At trial, Chaussee was permitted to testify as to what Maurice told her during these interviews.[4]

Chaussee testified that Maurice initially was afraid of her and that at one point during the first interview, she asked Morsette to come into the interview room because Maurice appeared to be comfortable around Morsette. Chaussee additionally testified that in the first two interviews, Maurice talked about (1) being hit by Patty with a belt and with a stick; (2) Phillip being hit by Patty; (3) Phillip being hit by Andy (Andrew Shaw was the man with whom Cree and the boys lived) with a rubber overshoe; and (4) Phillip's leg injury having occurred as a result of Phillip being pushed by Patty down a flight of stairs. Chaussee testified that in the third interview, Maurice did not want to talk about anything and that when she asked Maurice if he had been told by someone not to talk, he replied, "Flo." Chaussee also testified that she observed many of the above-described physical injuries to Maurice. Chaussee concluded, based on what Maurice had told her, that Maurice was an abused child.

On April 18, 1984, Agent Hellekson obtained a warrant to search the Cree/Shaw residence for items that Maurice had indicated were used to beat Phillip and him. Agent Hellekson took items seized in this search to the Peltier residence, where Maurice was living. Agent Hellekson testified that Maurice became excited when he was shown some of the items and that with respect to several of the items, Maurice answered affirmatively when asked if Cree or Shaw had hit him with them.

On appeal, Cree argues (1) that the District Court erred in admitting under Rule 803(24) of the Federal Rules of Evidence the testimony of Chaussee and Agent Hellekson concerning hearsay statements made by Maurice Alberts that identify Cree and Shaw as being responsible for the physical injuries to the Alberts boys and (2) that even if such testimony was admissible under Rule 803(24), its admission violated her Sixth Amendment right of confrontation. We reject Cree's claims and affirm her conviction.

## I.

A statement not specifically covered by [the exceptions in Fed.R.Evid. 803(1) to

---

**4.** The videotapes were made available to the defense in advance of trial. The District Court determined that the prosecution should present evidence of the interviews by calling Chaussee as a witness rather than by playing the tapes to the jury, but the defense was given the option of playing the tapes in court. While the tapes were not played, it is clear from the record that the defense made extensive use of the tapes in preparing its cross-examination of Chaussee.

(23) ] but having equivalent circumstantial guarantees of trustworthiness [is not excluded by the hearsay rule even if the declarant is available as a witness], if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the Federal Rules of Evidence] and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant. Fed.R.Evid. 803(24). Thus, "[t]here are five requirements for admission under Rule 803(24): (1) trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice." *Moffett v. McCauley,* 724 F.2d 581, 583 (7th Cir.1984); *see also* J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 803(24)[01], at 803–372 to –381 (1984). The trial court is entitled to a " 'considerable measure of discretion' in deciding whether to admit hearsay evidence under Rule 803(24)," 724 F.2d at 583, and its "determination of admissibility of evidence under Rule 803(24) will not be overturned on appeal except for an abuse of discretion." *United States v. Friedman,* 593 F.2d 109, 118 (9th Cir.1979).

Cree does not dispute that Maurice's statements, to which Chaussee and Agent Hellekson testified, meet the requirements of materiality and probative value. Nor does Cree claim that the notice requirement of Rule 804(24) was not met. Cree challenges the admission of Chaussee's and Agent Hellekson's testimony concerning these statements on the grounds that the statements do not have the necessary guarantees of trustworthiness and that their admission does not serve the interests of justice. We reject these claims by Cree.

■ There are substantial guarantees of trustworthiness attending the statements in question. Maurice's statements to Chaussee and Agent Hellekson that Phillip and he were hit with various objects by Cree and Shaw are substantiated by extensive, objective medical evidence of injuries that easily could have resulted from ·the abusive acts of Cree and Shaw stated by Maurice to have occurred. Similarly, the expert testimony of two physicians who examined Phillip and one physician who examined Maurice that these patients were victims of physical abuse supports Maurice's statements. Additionally, the record contains (1) evidence that when two school officials who examined an injury to Maurice's hand asked Maurice how the injury occurred, Maurice stated that Patty did it;[5] (2) evidence that when asked by an examining physician how he had been injured, Maurice replied that he had been hit with a belt; and (3) evidence that Maurice became visibly excited when Agent Hellekson showed him certain items that Maurice earlier had indicated were the instrumentalities of abuse in this case and that officers had seized during a search of the Cree/Shaw residence. Finally, Maurice's age is a significant factor supporting the finding that the challenged statements are trustworthy. *See Roberts v. Hollocher,* 664 F.2d 200, 205 (8th Cir.1981) (Court noted that in *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), the child declarant's age of nine years "was a factor supporting admissibility and assuring trustworthiness"); *accord United States v. Nick,* 604 F.2d 1199, 1204 (9th Cir.1979). It is highly unlikely that a

---

**5.** This testimony was admitted by the District Court only to show that Maurice made the statement to school officials, not to prove the matter asserted. While conceding that the statement to school officials is not substantive proof of an act of abuse by Cree, the fact that Maurice made such a statement separately to the two school officials and later made similar statements to Chaussee and Agent Hellekson in our view enhances Maurice's credibility.

four-year-old child would fabricate such accusations of abuse. Thus, having carefully reviewed the record, we conclude that the Rule 803(24) requirement of trustworthiness was satisfied in this case.[6]

■ We also conclude that the interests of justice were duly served by the admission into evidence of testimony concerning Maurice's statements. The propriety of requiring extremely young victims of abuse to take the stand as the only method for putting before the jury what is, in all probability, the only first-hand account of the circumstances of abuse other than that of the defendant is debatable. *See generally* Parker, *The Rights of Child Witnesses: Is the Court a Protector or Perpetrator?*, 17 New Eng.L.Rev. 643 (1982). In a more relaxed environment, the child in this case was able to provide his version of the relevant events and yet avoid a potentially traumatic courtroom encounter. In our opinion, the interests of justice thus were served by the admission of the challenged testimony.[7]

Rule 803(24) provides a trial court with some flexibility when it must make a determination as to the admissibility of hearsay evidence, and there is no specific rule governing admissibility. While evidence should be admitted under Rule 803(24) in only those cases presenting exceptional circumstances, it is hard to imagine many cases more compelling than this case. Accordingly, we hold that the District Court did not abuse its discretion by admitting into evidence the testimony of Chaussee and Agent Hellekson concerning certain statements made to them by Maurice Alberts.

## II.

■ Cree also claims that by admitting this testimony, her Sixth Amendment right to confront a witness against her, *i.e.*, Maurice, was violated. We need not consider the merits of this claim, however, because we hold that Cree waived her right to confront Maurice.

In its pretrial ruling on the admissibility of testimony by Chaussee, the District Court stated that Maurice "can be available just for viewing by the jury and an effort, if possible to believe and interrogate [him]." Motion in Limine Transcript at 18. It is reasonably clear that the court postponed a decision regarding Maurice's ability to testify at trial until such time as Maurice might have been called as a witness. The defense did not seek a definitive pretrial ruling on Maurice's qualification to testify. And Maurice was present at trial, but the defense did not call him to the stand. In short, the defense did not make even the slightest attempt to confront Maurice. The prosecution of course had no need to pursue the matter of Maurice testifying; the District Court already had ruled in the prosecution's favor concerning admission of the testimony of Chaussee and Agent Hellekson, thus obviating the need to call Maurice as a witness for the prosecution. We decline to hold that a defendant's right of confrontation mandates that the prosecution call to the stand a person who is available to be called by either side simply because cross-examination of that person may be favorable to the defense.

■ We note that under the particular circumstances of this case, the District

---

6. The defense presented evidence to refute Maurice's statement that Cree pushed Phillip down a flight of stairs. From the testimony of both Chaussee and Agent Hellekson it is readily apparent that some of Maurice's statements were in response to leading questions by Chaussee and Agent Hellekson, and that Maurice sometimes gave conflicting statements. Certainly these matters could have been considered by the jury in evaluating what weight to give Maurice's statements. They do not, however, render the statements untrustworthy within the meaning of Rule 803(24).

7. We do not mean to suggest that in future cases, evidence necessarily should be preserved and presented as it was in this case. But we recognize that special concerns arising in the prosecution of child abuse cases have not fully been met by the development of new methods of practice. Without transgressing upon the constitutional rights of defendants, the rights of defenseless child abuse victims must be protected.

Court may have ruled that Maurice was not qualified to testify, even if the defense had attempted to secure his testimony. If that had occurred, further examination of Cree's Sixth Amendment claim would be necessary. We merely hold that a defendant cannot proceed under the assumption that a witness would have been found incompetent or legally unavailable and thereafter make claims on appeal pursuant to that assumption. We also recognize that to call a young child to the stand for rigorous, in-court examination may not create an impression with the jury that is favorable to the defense. That, however, is a tactical consideration for the defense, not a reason to find that the defendant's right of confrontation has been violated.

## III.

For the reasons set forth above, the judgment of the District Court is affirmed.

JOHN W. OLIVER, Senior District Judge, dissenting.

## I.

I respectfully dissent from the majority opinion's affirmance of the judgment of the district court for the reason that the majority of this panel elected on its own motion, without any suggestion from government's counsel and without the benefit of any written or oral arguments from either of the parties, to reach the merits of only one of the two issues presented on appeal.

Those two issues, both of which the majority opinion concedes were properly preserved for appellate review, present the separate questions of whether Maurice's out-of-court statements made to Chaussee

and to Agent Hellekson during the criminal investigation of this case were admissible in evidence through the hearsay testimony of Chaussee and Agent Hellekson over defendant Cree's objections based (1) on hearsay grounds and (2) on the confrontation clause of the Sixth Amendment.

I also dissent from the majority opinion's determination of the merits of the Rule 803(24) hearsay issue. I do not believe that determination is supported by the record, or by the legal authority cited, and that it is in conflict with controlling Eighth Circuit decisions. I further dissent because I believe that the majority opinion's refusal to reach the merits of the Sixth Amendment confrontation clause is in conflict with controlling Supreme Court and Eighth Circuit decisions and is also in conflict with decisions of the Courts of Appeal of other circuits. I believe that, under the theory upon which the majority opinion was based, the majority opinion should have reached and should have decided the merits of defendant Cree's Sixth Amendment confrontation clause claim in her favor in accordance with controlling Supreme Court and Eighth Circuit decisions and in accordance with the rationale of other federal and State court decisions that have considered the same question.[1]

I shall first state the procedural history of the case in greater detail than stated in the majority opinion in order to put the three issues in more appropriate focus for analysis.

## II.

The record establishes that this case was complicated by the manner in which the district court treated the government's

---

**1.** Because I do not believe Maurice's out-of-court statements to Chaussee and F.B.I. Agent Hellekson were admissible in evidence as a new child witness exception to the hearsay rule under the residual clause of Rule 803(24), I would so decide and reverse and remand the case for a new trial without reaching the confrontation clause question. *See United States v. Oates,* 560 F.2d 45 (2d Cir.1977).

The majority opinion, however, concluded that the hearsay testimony of Chaussee and Agent Hellekson was admissible as a new child witness exception to the hearsay rule under the residual clause of Rule 803(24). It is therefore my view that the majority of this panel was under duty to reach and decide the merits of the confrontation clause question which was fully briefed and argued by the parties.

joint Rule 803(24) and Rule 804(5) notice that the government filed pursuant to the residual clauses of those two rules.[2] The record shows that the Rule 803(24) and Rule 804(5) notice stated only that the government "intends to offer *videotaped statements* of Maurice Alberts at trial." (Emphasis added). That joint notice did not give any notice to anyone that the government intended to introduce any out-of-court statement of Maurice through the hearsay testimony of any trial witness.[3]

The record further shows that defendant Cree's pretrial motion in limine was based on both hearsay and confrontation clause grounds and that her motion expressly sought to exclude both (1) the videotapes identified in the government's joint Rule 803(24) and Rule 804(5) notice and (2) any and all hearsay testimony that any government witness might give in regard to any out-of-court statement that Maurice may have made at any time during the course of the criminal investigation of this case.[4]

Cree's brief in support of her pretrial motion in limine cited 13 Supreme Court cases in support of her Sixth Amendment claim: *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Berger v. California,* 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *See* page 4 of Defendant Cree's brief in support of her motion in limine.

The government's opposition brief to the motion in limine, consistent with its joint Rule 803(24) and Rule 804(5) notice, was directed solely to the admissibility of Maurice's videotaped interviews. The government's brief, filed earlier on the day the district court had set the motion in limine for hearing, attached only selected portions of two of the three videotaped interviews as an exhibit to that brief. The government's brief expressly advised the district court that (1) the government intended to call Maurice as a witness at trial, and that (2) "the court will be asked to make an

---

**2.** The majority opinion's statement that "defendant Cree does not claim that the notice requirement of Rule 803(24) was not met," (at 477) is accurate only in the sense that such issue was not separately identified as an issue on appeal.

**3.** The record further establishes that defendant Cree directed the district court's attention to that fact when she objected to the hearsay testimony of witness Jetty, the first of four government witnesses who were permitted to testify about Maurice's out-of-court statements to them. *See* Trial Transcript at 29.

Although some of the cases have required strict compliance with the notice requirement of Rule 803(24), particularly in criminal cases, *see* discussion in *Weinstein's Evidence,* § 803(24)[01] at pages 803–379 and 380 and the cases there cited, I make clear that I would not reverse this case on the ground that the government's joint Rule 803(24) and Rule 804(5) notice did not comply with either of those rules.

To say that, however, is not to say that a factual statement of the procedural history of this case may properly ignore the fact that the joint notice only identified the three videotapes and that it did not name any witness through whom the government would later elicit testimony at trial.

**4.** The record establishes that defendant Cree's motion in limine prayed (1) for an "order preventing the United States of America, through its attorney, from introducing into evidence or referring to the video tape of Maurice Alberts" and (2) that the district court enter a second "order preventing the United States of America, through its attorney, from introducing into evidence *any out of Court statements made by Maurice Alberts* or Phillip Alberts, and that the United States of America be required to instruct *its witnesses* that such evidence is inadmissible." (Emphasis added). (Motion in limine Tr. at 2).

inquiry of the child, Maurice Alberts, as to his competency...." (*Id.* at 4).[5]

The record also shows that the United States Attorney had earlier sought the advice of the General Litigation and Legal Advice Section of the Criminal Division of the Department of Justice in Washington in regard to whether Maurice's videotapes were admissible in evidence. The Department of Justice responded to that request and forwarded its memorandum on the "Admissibility of Videotaped Interviews of Child Molestation Victim" to the United States Attorney. The government filed a copy of that Department of Justice memorandum with the district court at the same time it filed its brief in opposition to defendant Cree's motion in limine.[6]

The transcript of the brief pretrial proceedings conducted by the district court in regard to the motion in limine reflects that the district court had "not had an opportunity to read the government's brief...." (Mot. in limine Tr. at 3). That transcript shows that the district court, without taking time to read the government's brief and the Department of Justice memorandum,

requested the United States Attorney to "generally cover the evidence which the government has in this matter ... what your investigation has shown." (*Id.* at 4).

After the United States Attorney responded to that request, the district court was advised that the transcript of the selected portions of the videotapes attached to the government's brief were but a small portion of only two of the three of Maurice's videotaped interviews and that if "you run the tape in total it would be approximately three hours." (*Id.* at 9).[7] Thereafter, the district court decided to view only "that portion [of the videotapes] which the social worker feels is relevant." (*Id.* at 11).

The record establishes that the district court, in fact, viewed only portions of videotapes of the first two videotaped interviews.[8] The record shows that after the district court had viewed only portions of only two of the three videotapes, it stated that it would hear argument from counsel. (*Id.* at 13). Neither the government nor

**5.** The government's brief stated on page 5 that: "Assuming that the four year old boy, Maurice Alberts, can give testimony in court, it would *not* be necessary to offer the videotapes as evidence and they may not be offered for use during the trial at all...." (Emphasis added).

The government's brief emphasized the necessity that the district court would be required to make a pretrial determination of Maurice's availability or unavailability as a trial witness by stating that: "We have ... been told to expect that a four year old boy will probably not be able to give testimony in a trial setting. The experts have told us to expect that a four year old court witness will probably 'freeze up'. *In this event we expect to offer the videotapes as evidence of material facts.*" (Emphasis added).

**6.** The Department of Justice memorandum properly advised the United States Attorney that Maurice's videotaped interviews could not properly be admitted in evidence under the residual clauses of either Rule 803(24) or Rule 804(5) unless the government was in a position to establish that Maurice's videotaped interviews were recorded under factual circumstances that could be said to carry circumstantial guarantees of trustworthiness *equivalent* "to those of the other Rule 803 exceptions" or *equivalent* "to other Rule 804(5) exceptions." (Emphasis added).

That memorandum specifically directed the United States Attorney's attention to the Eighth Circuit cases of *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. Love,* 592 F.2d 1022 (8th Cir.1979); and *United States v. Benfield,* 593 F.2d 815 (8th Cir.1979), all of which will be later discussed in this dissenting opinion. *See* Document 19 in trial court record.

**7.** The record shows that the United States Attorney candidly advised the district court that he had seen only the portions of the tapes that had been transcribed; that he had not "seen the whole thing"; and that the social worker, rather than government counsel, was "the one that made the determination of relevancy." (*Id.* at 10).

**8.** The district court apparently accepted the United States Attorney's suggestion that it was not necessary that it view any portion of the third videotape because the United States Attorney believed that "it's fair to say that Maurice was not a good interview candidate on the third tape." (*Id.* at 12). The United States Attorney, consistent with his earlier statement to the district court that Maurice would be called as a witness at the trial, stated at the same time that we "worry about whether or not he will be a productive witness at trial...." (*Id.* at 12).

the defense, however, presented any legal argument at that time nor at any other time during the brief pretrial proceeding conducted by the district court in connection with the motion in limine. None of the numerous cases cited in briefs of the parties or in the Department of Justice memorandum were ever mentioned, either by counsel or by the district court.[9] The record shows, however, that the district court immediately proceeded to rule the motion in limine from the bench.

The record establishes that the district court's ruling was based solely on its view of only portions of two of Maurice's three videotaped interviews. The record further establishes that the district court did not conduct any separate pretrial proceeding to determine Maurice's availability or unavailability as a trial witness as the government had requested.[10]

The record shows that the district court first indicated how it intended to rule the motion by stating that "[m]y ruling will be is that we are dealing with Rule 803, hearsay, exceptions to the hearsay [rule] and 803 is entitled hearsay exceptions, availability of declarant." It then stated that "the declarant in this case is a four-year-old child" and that the "exception to the hearsay [rule] would be the testimony of the social worker." (*Id.* at 17). The district court then stated that "my inclination is, first of all, I'm going to allow the evidence to go in" and that the evidence "should go in by way of interrogation of the social worker and what ... was told to the social worker by this child,...." (*Id.* at 18).

The record shows that the district court confirmed its intended denial of defendant Cree's motion in limine by stating that:

> That's my ruling. You may put the social worker on. Social worker will be permitted to testify as to what the child told her, ... I think the social worker is a competent witness under Rule [803] 24 to testify. Social worker then, of course, is subject to cross examination.

(*Id.* at 18–19).[11]

The record establishes that the district court did not cite any evidence or any legal authority in support of its ruling that defendant Cree's motion should be denied. The record further shows that when the district court made its trial ruling that the hearsay testimony of Agent Hellekson was admissible in evidence, it assumed that the hearsay and confrontation clause questions presented in regard to Agent Hellekson's hearsay testimony were identical to those

---

**9.** Indeed, the United States Attorney expressly stated that he was not going to get "involved in the legal argument, because I have made that in the brief...." (*Id.* at 16). That statement, of course, was based on the United States Attorney's reasonable but erroneous assumption that the district court would at least read the government's brief and the Department of Justice memorandum before it would rule defendant Cree's pretrial motion in limine.

**10.** The majority opinion suggested, without any supporting citation of the record, that "[i]t is reasonably clear that the court postponed a decision regarding Maurice's ability to testify at trial until such time as Maurice might have been called as a witness." I disagree. The only thing I believe that is reasonably clear from the record is that the district court did not believe that it was required to make *any* "decision regarding Maurice's ability to testify at trial."

Certainly the record is clear, as the majority opinion's "postponement" suggestion necessarily implies, that the district court never recognized any necessity for conducting any separate pre-

trial hearing or any necessity that it make a definitive finding of record in regard to Maurice's "availability" or "unavailability" as a trial witness for either hearsay or confrontation clause purposes.

The majority opinion's suggestion, of course, underlines its view that the duty rested upon the defense rather than the prosecution to call and qualify Maurice as a prosecution witness so that he would be able to be a trial witness against defendant Cree.

**11.** The record establishes that neither the district court nor counsel ever discussed the separate question of whether the hearsay testimony of Agent Hellekson could be said to be admissible as an exception to the hearsay rule under Rule 803(24) or whether the admission of that hearsay testimony would violate defendant Cree's right guaranteed by the confrontation clause. Agent Hellekson's name was not even mentioned at any time during the motion in limine proceedings. And his name was not included in the government's joint Rule 803(24) and Rule 804(5) notice. Indeed, no person's name was included in that notice.

presented in regard to witness Chaussee. For the record shows that when the district court overruled defendants' trial objections to Agent Hellekson's hearsay testimony, it expressly stated that at "the [pretrial] hearing on this matter, Court ruled that the social worker pursuant to Rule 803 (24) would be permitted to testify as to ... her conversations with the four-year-old Maurice Alberts" and that it would be *"on that basis* the Court is going to allow this witness [Agent Hellekson] to testify as to the statements made to him by the four-year-old." (Emphasis added). (Trial Tr. at 240 and 241).[12]

I turn now to the majority opinion's refusal to consider the confrontation clause question presented based on its finding and theory of waiver.

### III.

#### A.

Part II of the majority opinion summarily, on its own motion and without the citation of any legal authority, refused to consider the merits of defendant Cree's Sixth Amendment confrontation clause claim. That opinion states that "[w]e need not consider the merits of this claim ... because we hold that Cree waived her right to confront Maurice." (at 478).

The majority opinion, again without the citation of any legal authority, made clear that "[w]e decline to hold that a defendant's right of confrontation mandates that *the prosecution* call to the stand a person *who is available to be called by either side* simply because *cross-examination* of that person may be favorable to the defense." (Emphasis added). (*Id.* at 10).[13] The majority opinion further states in its last paragraph that "further examination of Cree's Sixth Amendment claim [by this Court] would be necessary" only in the event "the *defense* had attempted to secure his testimony" and that "a defendant cannot proceed under the *assumption* that a witness *would have been found* incompetent or legally *unavailable* and thereafter [to be entitled to] make claims on appeal pursuant to that *assumption.*" (Emphasis added). (*Id.* at 10).[14]

Finally, and most important, it must be noted that the majority opinion concluded that a defendant's failure "to call a young child to the stand" for the purpose of establishing that the witness may be "unavailable" as a trial witness for the prosecution must be considered as "a tactical consideration for the defense, not a reason to find that the defendant's right of confrontation has been violated." (*Id.* at 10). It is thus clear that the majority opinion is based on a theory, adopted without the

**12.** The majority opinion's decision in regard to the admissibility of Agent Hellekson's hearsay testimony is based on precisely the same assumption as that made by the district court. I do not know of any authority, and certainly the majority opinion does not cite any authority that may be said to support a conclusion that identical questions of fact and law are presented in regard to whether the hearsay testimony of Chaussee and that of Agent Hellekson are admissible in evidence either under the new child witness exception to the hearsay rule which the majority opinion recognizes under the residual clause of Rule 803(24) or under some exception to the confrontation clause of the Sixth Amendment.

**13.** It is obvious that the majority opinion's quoted statement assumes, as a matter of fact, that the record establishes that Maurice was, in fact, "available to be called by either side." If the record could be said to support such a finding, I believe that it is further obvious that the hearsay

testimony of Chaussee and Agent Hellekson should have been excluded for the reason that a finding of Maurice's "availability" would have conclusively established that *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), primary predicate of "unavailability" had not, in fact, been satisfied under the circumstances of this case.

**14.** The portion of the majority opinion quoted in the text above is obviously inconsistent with its earlier statement that Maurice had, in fact, been determined to be a witness who was "available to be called by either side." The inconsistency in the majority opinion's statements highlight the fact that the district court never conducted an appropriate hearing for the purpose of making a factual finding in regard to Maurice's "availability" or "unavailability" within the meaning of the first predicate of *Ohio v. Roberts'* dual standard. *See* 448 U.S. at 66, 100 S.Ct. at 2539.

benefit of briefs or arguments of the parties, that defendant Cree's failure to call Maurice to the stand must be considered as a waiver of her Sixth Amendment right to be confronted by the witnesses against her. The record establishes, of course, that neither the district court nor anyone else ever advised defendant Cree that she had to do anything more than file her motion in limine and pray for an order that the district court exclude the hearsay testimony of all prosecution witnesses on both hearsay and confrontation clause grounds.

The factual circumstances upon which the majority opinion attempts to rely to support its waiver theory were stated as follows:

> The *defense* did not seek a definitive pretrial ruling on Maurice's qualification to testify. And Maurice was present at trial, but the *defense* did not call him to the stand. In short, the *defense* did not make even the slightest attempt to confront Maurice. (Emphasis added).

(at 478).

No principle of constitutional law with which I am familiar supports a conclusion that "the *defense*" is under any duty to "seek a definitive pretrial ruling [in regard to a prosecution witness'] qualification to testify." I have always understood that the prosecution is required to call to the witness stand and to qualify all prosecution witnesses in order to carry the constitutional burden of proving its case against the defendant beyond reasonable doubt. *See*

*Francis, Warden v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Nor do I know of any legal authority that can be said to support a conclusion that "the *defense"* is ever under any duty to call any prosecution witness to the witness stand in the trial of any criminal case.[15]

We turn now to the Supreme Court and Eighth Circuit cases and to cases decided by other circuits that have articulated the standards for determining when a defendant can be said to have waived his rights under the confrontation clause of the Sixth Amendment.

### B.

The standard applicable to the waiver of a defendant's Sixth Amendment right of confrontation, as initially stated almost fifty years ago in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), was reiterated almost twenty years ago in *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966). The Court there held, without dissent, that:

> There is a presumption against the waiver of constitutional rights, *see, e.g., Glasser v. United States,* 315 U.S. 60, 70–71 [62 S.Ct. 457, 464–65, 86 L.Ed. 680], and for a waiver to be effective it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.[16]

---

15. The Sixth Amendment, of course, in a different clause, guarantees that an accused shall enjoy the right to "compulsory process for obtaining witnesses in his favor." *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). But I know of no authority that suggests that a failure of defendant to exercise his right to compulsory process can be said to waive the right guaranteed him under the confrontation clause.

16. *See also Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968), in which the Court concluded, again without dissent, that "a waiver of the right of confrontation" must comport "with this Court's definition of a waiver as an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, [58 S.Ct.

1019, 1023, 82 L.Ed. 1461] (1938); *Brookhart v. Janis,* 384 U.S. 1, 4, [86 S.Ct. 1245, 1246, 16 L.Ed.2d 314] (1966)."

And further *see Phillips v. Neil,* 452 F.2d 337 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972), in which the familiar waiver standard was applied in a Sixth Amendment confrontation clause case. *Phillips v. Neil* was cited with approval by the Eighth Circuit in *United States v. Carlson,* 547 F.2d 1346, 1356 (8th Cir.1976). As noted above, the Department of Justice memorandum directed attention to *Carlson. Phillips v. Neil* was most recently cited with approval in *Stevens v. Bordenkircher,* 746 F.2d 342 (6th Cir.1984), which held that "even though admission of evidence may be proper under the hearsay rule or one of its various exceptions, a court must still evaluate the evidence in light of the Confrontation Clause. *See*

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), summarized the near-century of jurisprudence reflected by the numerous confrontation clause cases decided by the Court over the years by stating that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable." (*Id.* at 66, 100 S.Ct. at 2539). *Ohio v. Roberts* further made clear that when the words "available" and "unavailable" are used in the constitutional sense of the confrontation clause of the Sixth Amendment, those words are to be understood as referring to the factual circumstance of whether the hearsay declarant is "available" or "unavailable" for purpose of confrontation of the defendant as a trial witness. And, as that case expressly held, the burden rests on "the *prosecution* ... [to] demonstrate the *unavailability* of the declarant whose statement it wishes to use against the defendant." (Emphasis added). (448 U.S. at 65, 100 S.Ct. at 2538).

The Eighth Circuit, in its post-*Ohio v. Roberts* case of *United States v. Massa,* 740 F.2d 629, 640 n. 6 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), by way of dictum, rejected the argument that a defendant is under any duty to call an available prosecution witness to the witness stand. *Massa* considered, but found that it was unnecessary to decide on harmless error grounds, an "additional question, not pressed by the government in its brief, of whether the confrontation clause prevents the use of hearsay statements when the declarant is available to both sides." It is my view that the panel of this Court deciding this case is

under duty to look to the rationale of *Massa* in regard to whether it can be said, as the majority opinion did say, that no duty rests upon "the prosecution to call to the stand a person who is available to be called by either side." (at 478).

*Massa* rejected the government's argument made in that case, based on two pre-*Ohio v. Roberts* Ninth Circuit cases, that the defense, rather than the prosecution, was under duty to call a declarant available to both sides to the witness stand.[17] *Massa* noted that the two Ninth Circuit cases were decided before *Ohio v. Roberts* and concluded that "[w]e read *Roberts,* ... *to place the burden on the government to make available for cross-examination* a witness whose out-of-court statements it is using against the defendant." (Emphasis added). (740 F.2d at 640 n. 6). *Massa* based that conclusion on and quoted *Ohio v. Roberts'* holding in 448 U.S. at 66, 100 S.Ct. at 2539 that

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Every circuit that has ruled the waiver question, in cases decided both before and after *Ohio v. Roberts,* has rejected the argument that a defendant is under any

*California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970); *Phillips v. Neil,* 452 F.2d 337, 345 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972)." (746 F.2d at 347 n. 5).

**17.** The two Ninth Circuit cases relied on by the government in *Massa* were *United States v. Weiner,* 578 F.2d 757, 771 (9th Cir.1978), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978), and *United States v. Snow,* 521 F.2d 730, 736 (9th Cir.1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976). The government attempts to rely on both those pre-

*Ohio v. Roberts* cases in this case to support its argument on the merits of defendant Cree's Sixth Amendment claim. As we have already noted, the government has never suggested that defendant Cree somehow waived her confrontation clause rights or that the merits of her constitutional claim should not be decided on appeal. In any event, it is my view that the rationale of *Massa* requires that the panel of the Court deciding this appeal reject the rationale of the two Ninth Circuit cases until and unless the Eighth Circuit en banc otherwise concludes.

duty to call an available prosecution witness under pain of waiver of the right guaranteed him by the confrontation clause of the Sixth Amendment. The Fifth Circuit in *Hoover v. Beto*, 439 F.2d 913 (5th Cir. 1971), for example, decided before *Ohio v. Roberts*, presented the question of whether the defendant was denied his right to confront a person named Sellars whose out-of-court statements were introduced in evidence against him through the hearsay testimony of a police officer—the precise factual situation presented in this case in regard to the admission of Maurice's out-of-court statements introduced in evidence through the hearsay testimony of Agent Hellekson. The Fifth Circuit expressly noted that Sellars was "available" to be called as a witness by either the prosecution or the defendant.[18]

*Hoover v. Beto* reversed the district court's denial of a State prisoner's petition for habeas corpus, concluding that the fact "Sellars was available to be called as a witness [by either side] does not mitigate the prosecution's misconduct here." The Fifth Circuit added that:

> To accept the State's argument that the availability of Sellars is the equivalent of putting him on the stand and subjecting him to cross-examination would severely alter the presumptions of innocence and the burdens of proof which protect the accused. *Hoover's undoubted right to call Sellars as a witness in his behalf cannot be substituted for his Sixth Amendment right to confront Sellars as a witness against him.*[19] (Emphasis added).

(439 F.2d at 924).

The Seventh Circuit case of *Simmons v. United States*, 440 F.2d 890 (7th Cir.1971), also decided before *Ohio v. Roberts*, was an appeal from the district court's denial of a Section 2255 motion. The defendant's motion had been denied by the district court on the ground that the defendant, at trial, could have called the declarant "as a witness, or have asked the court to call him as a court witness, and presumably would have been permitted to cross-examine him." (440 F.2d at 891).

The Seventh Circuit reversed, holding that "where an extrajudicial declaration is used under circumstances such that the opportunity to cross-examine the declarant is essential to a defendant's right of confrontation, *it must be the government's burden to produce the declarant.*" (Emphasis added). (*Id.* at 891). The Seventh Circuit concluded that "[m]ere availability, in the sense that defendant could have subpoenaed him, does not, in our opinion, suffice." (*Id.* at 891).

The Third Circuit, in *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3rd Cir.1977), still another pre-*Ohio v.*

---

**18.** The Fifth Circuit further noted that the "State did not call Sellars as a witness" and that it had elected at trial to get Sellars' out-of-court statements before the jury through the testimony of the police officer "in its case in chief and thus put the burden of rebuttal on the defense." (439 F.2d at 924).

**19.** I recognize that the Fifth Circuit, en banc, in *Hoover v. Beto*, 467 F.2d 516 (5th Cir. en banc 1972), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673 (1972), reversed the panel opinion reported in 439 F.2d 913. Judge Rives in his en banc dissent, with whom six other Fifth Circuit judges joined, accurately pointed out that the majority en banc opinion did not rely on the notion that "Sellars could have been called to the stand by Hoover [the defendant]."

Indeed, Judge Rives quoted in his en banc dissent what he said in the panel opinion (which I have quoted in the text above) and added the following footnote to support the principles stated: "To similar effect see the remarks of Mr. Justice Marshall in his dissent to *Dutton, supra,* 400 U.S. at 102 n. 4, 91 S.Ct. at 226: '[I]t remains that the duty to confront a criminal defendant with the witnesses against him falls upon the *State,* and here the State was allowed to introduce damaging evidence without running the risks of trial confrontation.' (Emphasis in original.) And see *Barber v. Page, supra,* where the State was required to make a good faith effort to produce the declarant before the Court would admit hearsay evidence of the declarant's prior statement." (*Id.* at 560–61, n. 35).

It should be further noted that the Eighth Circuit, in *McDonnell v. United States,* 472 F.2d 1153, 1155 (8th Cir.1973), cited the panel opinion in *Hoover v. Beto* with approval after the Fifth Circuit en banc decision was handed down in that case.

*Roberts* case, adopted the rationale stated in Justice Harlan's frequently cited concurring opinion in *California v. Green,* 399 U.S. 149, 174, 90 S.Ct. 1930, 1943, 26 L.Ed.2d 489 (1970), which stated that "the Confrontation Clause of the Sixth Amendment reaches no farther than to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial." (Emphasis Justice Harlan). (548 F.2d at 463). The Third Circuit held that Justice Harlan's *"produce* any *available* witness"* conclusion must be understood to mean that if an available witness' hearsay testimony is to be admitted in evidence, the prosecution must not only *"produce"* that witness *"but [the witness] must also* be sworn and made available *for cross-examination"* by the defendant. (Emphasis added). (548 F.2d at 463).[20]

The Ninth Circuit in *United States v. Fielding,* 630 F.2d 1357, 1359 (9th Cir. 1980), decided after *Ohio v. Roberts,* reversed a defendant's conviction on both hearsay and confrontation clause grounds.[21] The original panel opinion in that case noted that the out-of-court statements of one Bobby Flores were admitted in evidence through the hearsay testimony of witnesses Wagner and McClary. In that case, as in this case, the "record is silent as to whether or not Bobby Flores was available as a witness at trial." (*Id.* at 1368).

The original panel opinion in *Fielding* noted, however, that "[a]t oral argument ... the appellee conceded that Bobby Flores was available *but that it had simply not called him as a witness."* (Emphasis added). (*Id.* at 1368). *Fielding* held that: "Because Bobby Flores was available as a witness *and not produced at trial,* [by the prosecution] the use of his hearsay declarations violated the Confrontation Clause." (Emphasis added). (*Id.* at 1368).

I conclude from the cases decided by the Supreme Court and by the Third, Fifth, Seventh, Eighth, and Ninth Circuits above discussed that it cannot properly be concluded that the defendant Cree in any way waived her right to have her confrontation clause claim determined on the merits by this Court and that the waiver decision in the majority opinion is in direct conflict with the decisions of the cases above cited.

I turn now to how I believe the confrontation clause question presented in this case should have been decided on the merits.

**IV.**

**A.**

As I have stated, I would reverse the district court and remand the case for a new trial solely on hearsay grounds and thus would not need to reach the constitutional question presented under the confrontation clause.[22] It is necessary, how-

---

**20.** Justice Harlan said much the same thing in another part of his concurring opinion in *California v. Green* which was not quoted by the Third Circuit when he said: "There is no reason in fairness why a State should not, as long as it retains a traditional adversarial trial, produce a witness and afford the accused an opportunity to cross-examine him when he can be made available." (Emphasis added). (399 U.S. at 187, 90 S.Ct. at 1950).

**21.** I recognize that the panel opinion in *United States v. Fielding,* cited above, was withdrawn on petition for rehearing in *United States v. Fielding,* 645 F.2d 719 (9th Cir.1981), and that a new per curiam opinion was substituted for the panel opinion reported in 630 F.2d 1357. The new per curiam opinion denied the petition for rehearing and reversed the district court on hearsay grounds alone, apparently in recognition of the established rule that a court should

not reach constitutional questions if the case can be decided on other than constitutional grounds. *See United States v. Oates,* 560 F.2d 45, 80 (2d Cir.1977). The per curiam opinion in *Fielding* did not in any way suggest that the original panel had failed properly to state the principles applicable to the confrontation question.

I cite and discuss the original panel opinion in *Fielding* because of the extremely small number of cases that have been required to even consider the argument that the failure of a defendant to call an "available" hearsay declarant as a defense witness may somehow be construed as a waiver of that defendant's right to be confronted by the witnesses that the prosecution is under duty to call to testify against him.

**22.** I would, however, consistent with the pattern and rationale of *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), state the constitutional princi-

ever, that I reach the merits of the confrontation issue for the reason that the majority opinion concluded that the hearsay testimony of Chaussee and Agent Hellekson was admissible in evidence under a new child witness exception to the hearsay rule that it recognized under the residual clause of Rule 803(24).

### B.

The Sixth Amendment provides in part that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." All lower federal and all State courts are under duty to interpret and apply the exceptions that the Supreme Court has recognized in regard to that constitutional guarantee in accordance with the numerous and sometimes conflicting decisions of the Supreme Court of the United States. For, as *Ohio v. Roberts* pointed out, "[i]f one were to read this [confrontation clause] language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial." (448 U.S. at 63, 100 S.Ct. at 2537).[23]

Discussion of the confrontation clause issue presented on this appeal must commence in light of the fact that the memorandum of law entitled "Admissibility of Videotaped Interviews of Child Molestation Victim," prepared by the Department of Justice in Washington, and filed by the government in opposition to defendant Cree's motion in limine, properly cited the controlling Eighth Circuit videotape confrontation clause case of *United States v. Benfield*, 593 F.2d 815 (8th Cir.1979). For *Benfield*, although decided before *Ohio v. Roberts*, establishes that Maurice's videotaped interviews, identified in the government's joint 803(24) and 804(5) notice, were inadmissible in evidence under the confrontation clause. Application of *Benfield*'s rationale to the factual circumstances of this case, in my view, also requires a conclusion that the hearsay testimony elicited from Chaussee and Agent Hellekson was also inadmissible under the confrontation clause regardless of the fact that Maurice's out-of-court statements to those two witnesses may, or may not have been, recorded on videotape.

For *Benfield*'s decision, as I read that case, was not in any way based on the fact that the court reporter who took the Rule 15 deposition authorized by the district court in that case had not accurately and reliably transcribed the declarant-victim's out-of-court statements at the time that deposition was taken. I further believe that the panel deciding this appeal is under duty to recognize that the recent Eighth Circuit case of *United States v. Terrazas-*

ples to be applied by the district court with respect to the confrontation clause questions that would likely arise on remand.

**23.** It is too late in the day for anyone to reasonably suggest that the confrontation clause of the Sixth Amendment may be given a literal reading. For the Supreme Court accurately stated ninety years ago in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), to which *Ohio v. Roberts* directed attention, that "there could be nothing more directly contrary to the letter of the provision in question [i.e., the confrontation clause] than the admission of dying declarations." (*Id.* at 243, 15 S.Ct. at 339).

Although *Mattox* recognized that it was "bound to interpret the Constitution in light of the law as it existed at the time it was adopted," it concluded that it was also bound to recognize that many of the provisions in the "Bill of Rights are subject to exceptions" and that a "technical adherence to the letter of a constitutional provision" should be avoided. (*Id.* at 243,

15 S.Ct. at 339) *Mattox* accordingly held that the "substance of the constitutional protection [of the confrontation clause] is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." (*Id.* at 244, 15 S.Ct. at 339).

The truly difficult questions that are presented in current confrontation clause cases are what additional exceptions, if any, may properly be recognized in light of the unliteral interpretations the Supreme Court has given the confrontation clause over the years.

*See* the Note in 85 Columbia Law Review 1294 (October 1985), entitled "Reconciling the Conflict Between the Coconspirator Exemption from the Hearsay Rule and the Confrontation Clause of the Sixth Amendment" in regard to the difficulties the lower federal courts must today face in deciding confrontation clause cases.

*Montano,* 747 F.2d 467 (8th Cir.1984), properly recognized *Benfield* authority and that *Terrazas-Montano* distinguished *Benfield* solely on the facts.

*Terrazas-Montano,* decided after *Ohio v. Roberts,* properly concluded that the hearing testimony of a prosecution witness, regardless of whether the declarant's statements were recorded on videotape, are inadmissible in evidence under the confrontation clause unless and until the prosecution carried the burden of establishing both predicates for admissibility under the confrontation clause as stated in *Ohio v. Roberts'* dual standard.

The record establishes that the district court failed to recognize the mandate of *Ohio v. Roberts, Benfield,* and *Terrazas-Montano* at the time defendant Cree's objections, based on both hearsay and confrontation grounds, were overruled by the district court. It is therefore appropriate that I discuss the rationale of those two controlling Eighth Circuit cases in some greater detail.

## C.

Both *Benfield,* and *Terrazas-Montano* involved Rule 15 videotaped depositions of a government witness authorized by district court order. The Rule 15 order that authorized the deposition involved in *Benfield,* however, contained a provision that the defendant could only be "present at the deposition but not within the vision of Mrs. Patricia Cody," the victim of the crime. The Rule 15 order in *Terrazas-Montano*

did not contain a similar restrictive provision.

*Benfield* concluded that the earlier Supreme Court Sixth Amendment cases of *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), *Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899), *Dowdell v. United States,* 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911), and *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), "all support [the] view" that "[n]ormally the right of confrontation includes *a face-to-face meeting* at trial at which time cross-examination takes place." (Emphasis added). (593 F.2d at 821).[24] *Benfield* noted that on the facts of that case, the "defendant was not allowed to confront the witness face to face" under the conditions of the district court's Rule 15 order and accordingly reversed the defendant's conviction on the ground the defendant had been denied rights guaranteed him by the confrontation clause of the Sixth Amendment.[25] (*Id.* at 822).

In *Terrazas-Montano* the Rule 15 videotape depositions authorized by the district court in that case did not in any way curtail the "face to face meeting" aspect of the confrontation rights of the defendant. The *Terrazas-Montano* panel accordingly concluded that *"Benfield* is easily distinguished from the case at bar." (747 F.2d at 469). It is important to note that *Terrazas-Montano* recognized and applied the dual standard of *Ohio v. Roberts* to the factual circumstances of that case.[26]

**24.** *Benfield,* in reliance on the more recent case of *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974), also added that "[o]f course, confrontation requires cross-examination *in addition to a face-to-face meeting."* (Emphasis added). (*Id.* at 821).

**25.** *Benfield* summarized its holding by stating that "[b]asically the confrontation clause contemplates the active participation of the accused at all stages of the trial, *including the face-to-face meeting* with the witness at trial or, at the minimum, in a deposition allowing the accused *to face the witness,* assist his counsel, and participate in the questioning through his counsel." (Emphasis added). (*Id.* at 821). *Benfield* also held that a "further exception *to the face-to-face*

*aspect* of the confrontation clause urged by the Government presents a too severe curtailment of this constitutional right." (Emphasis added). (*Id.* at 821).

*Benfield,* in my judgment, states the law to be applied in Sixth Amendment confrontation clause cases by all district courts and by all panels of the Eighth Circuit until and unless the Court of Appeals of the Eighth Circuit, sitting en banc, decides otherwise.

**26.** *Terrazas-Montano* concluded that the district court made a proper finding that the witnesses in that case, who had been deported to Mexico, were "unavailable" under principles stated in *Mancusi v. Stubbs,* 408 U.S. 204, 211–13, 92 S.Ct. 2308, 2312–13, 33 L.Ed.2d 293 (1972). In regard

*Terrazas-Montano* is obviously distinguishable on its facts from this case. For the defendant in *Terrazas-Montano* was fully accorded both the right to meet the declarant face-to-face and the right to fully cross-examine the declarant in the course of the Rule 15 deposition taken pursuant to an unrestricted order of the district court in that case. In this case, however, the record establishes that all of Maurice's out-of-court statements that were admitted in evidence through the hearsay testimony of both Chaussee and Agent Hellekson were made under the circumstances of a criminal investigation which obviously deprived defendant Cree of any opportunity to meet Maurice face-to-face or to cross-examine him.[27]

It is appropriate that the factual circumstance that Maurice's out-of-court statements to Chaussee were recorded on videotape and those made to Agent Hellekson were not, be laid to one side. It is my view, that the district court should have conducted appropriate pretrial inquiry in regard to the separate questions of (1) whether Maurice was, in fact, "unavailable" for confrontation purposes as required by the first aspect of *Ohio v. Roberts'* dual standard, and (2) whether the factual circumstances under which Maurice's out-of-court statements, made as they were at entirely different times to two different witnesses, could be said, on the

facts, to satisfy the second "indicia of reliability" aspect of *Ohio v. Roberts'* dual standard.

### D.

I do not believe that application of the dual standard of *Ohio v. Roberts* to the factual circumstances of this case is a difficult task. The district court expressly stated in its order denying defendant Cree's motion for new trial, contrary to the record, that "the child [was, in fact,] *available* during the trial for [purposes of] cross examination." (Memorandum and Order of July 16, 1984, p. 3). And the majority opinion proceeds on the factual assumption, again without any support in the record, that "Maurice was present at trial [but that] the defense did not call him to the stand." (Majority at 478). In short, the district court rulings and the majority opinion are both based on the untenable factual assumption that Maurice was, in fact, "available" as a witness at the trial.[28]

The record, as I read it, establishes beyond doubt that the government failed to carry its burden of establishing the requisite element of Maurice's "unavailability" as a trial witness as mandated by the first aspect of *Ohio v. Roberts'* dual standard. A court of appeals, in my view, cannot properly make a finding in regard to Maurice's "unavailability" as a trial witness for confrontation clause purposes; for it is the duty of the district court to make all neces-

to whether the second aspect of *Ohio v. Roberts'* dual standard had been satisfied, the *Terrazas-Montano* court concluded that "the trial-type setting of the depositions produced sufficient 'indicia of reliability' to satisfy the sixth amendment. *See Ohio v. Roberts*, 448 U.S. at 62–66, 100 S.Ct. at 2537–39." (747 F.2d at 469).

27. I do not believe that the fact that Maurice's out-of-court statements to Chaussee were recorded on videotape or the fact that Maurice's out-of-court statements to Agent Hellekson were never recorded on videotape can be said to establish factual circumstances that may properly take this case out of the principles stated by the Supreme Court in *Ohio v. Roberts,* and by the Eighth Circuit in *Benfield* and *Terrazas-Montano.* For none of those cases turned on any question of fact as to whether the declarant's out-of-court statements were or were not recorded on videotape. All three cases turned on

the common factual question of whether defendant had been deprived of his right to confront and to cross-examine the declarant.

28. The government's trial and appellate position that the hearsay testimony of Chaussee and Agent Hellekson was admissible under Rule 803(24) rather than Rule 804(5), both of which were included in its joint notice, reflects its election to proceed under the factual theory and the rule which covers the situation under which, on the facts, the "availability of the declarant [is] immaterial" [Rule 803(24) ], rather than the situation under which, on the facts, the "declarant [is] unavailable" as a trial witness [Rule 804(5) ].

I do not believe that it is logically possible to consider that Maurice was "available" for hearsay purposes under Rule 803(24) and, at the same time, to consider him "unavailable" for confrontation clause purposes.

sary findings of fact in the trial of a criminal case.

I would accordingly reverse and remand with directions that the district court, before commencement of a new trial, conduct an appropriate pretrial inquiry and determine on the record whether Maurice, under the standards stated in *Wheeler v. United States,* 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895),[29] is, or is not, "available" as a witness within the meaning of the first aspect of *Ohio v. Roberts'* dual standard.

In regard to the second reliability aspect of *Ohio v. Roberts'* dual standard, I do not believe that the record can be said to support any finding that the government established any "indicia of reliability" in regard to the circumstances under which Maurice's out-of-court statements were made to witness Chaussee. And certainly the record establishes that the government never introduced any evidence as to the reliability of the circumstances under which Maurice made his out-of-court statements to Agent Hellekson. And, once again, I do not believe the panel of this Court can make any findings of fact in regard to the circumstances under which Maurice made his out-of-court statements to Agent Hellekson.

In detailed regard to Chaussee, the record is clear that the district court viewed only portions of two of the three videotapes. Neither the district court nor this Court has any way of knowing what might appear on the unviewed portions of the first two tapes. For neither the unviewed portions of all three videotapes nor any other evidence pertaining to the unviewed portions was ever adduced in the district court.[30] For the reasons stated, I believe this Court should hold that the record shows that the government failed to carry the burden of showing that *Ohio v. Roberts'* reliability requirement for confrontation purposes had been met in regard to Chaussee's hearsay testimony.

In detailed regard to Agent Hellekson, the record, as I have noted, is absolutely silent in regard to whether any "indicia of reliability" could be said to exist in regard to the circumstances under which Maurice made his out-of-court statements to Agent Hellekson. I believe that this case should be reversed and remanded on the ground, standing alone, that the district court erred when it admitted Agent Hellekson's testimony over defendant Cree's objection based on both hearsay and confrontation grounds.[31]

### E.

The government's response to a request made of counsel by Judge Ross at oral

---

**29.** *Wheeler,* of course, concluded that a four-year-old child was not, as a matter of law, disqualified as a trial witness. *See also United States v. Spoonhunter,* 476 F.2d 1050 (10th Cir. 1973) (which involved an Indian child who was six years old at the time of the child abuse offense and who was held to be a qualified witness); *Pocatello v. United States,* 394 F.2d 115 (9th Cir.1968) (in which a five-year-old Indian child, after appropriate pretrial inquiry, was held to be a qualified witness in a child abuse case); and *State v. Campbell,* 705 P.2d 694, 299 Or. 633 (Sup.Ct. of Or., in banc, 1985) (which I will later discuss in more detail, in which the defendant's conviction was reversed on confrontation clause grounds because the trial court failed to conduct an appropriate proceeding to determine the "availability" or "unavailability" of a three-year-old child witness in a child abuse case).

**30.** A full view of all three videotapes, plus additional testimony from Chaussee and from other witnesses, such as the testimony of the BIA

criminal investigator who had a great deal to do with having the tapes made in the first place, might enable the district court on remand to make appropriate findings of "indicia of reliability" that might satisfy the reliability standard of *Ohio v. Roberts* in regard to Chaussee's hearsay testimony, assuming that the district court, after appropriate inquiry, determined that Maurice was, in fact, unavailable as a trial witness. Those questions, and how they should be processed before new trial, in my view, are matters that should be dealt with in an order remanding the case to the district court.

**31.** I would further include in the directions in the remand order of this Court a provision that Agent Hellekson's hearsay testimony be excluded from the second trial. For it is my considered judgment that under the factual circumstances already established of record in this case, that it is impossible for the government to establish any "indicia of reliability" in regard to circumstances under which Maurice made his out-of-court statements to Agent Hellekson.

argument removes any doubt about the government's position in regard to whether it was under any duty to establish either of the two requirements of *Ohio v. Roberts'* dual standard. Judge Ross requested counsel to comment in writing on two recently decided State court cases which, at the time of oral argument, had only been digested in 36 Cr.L. 1051 and 36 Cr.L. 2221. Both cases have since been fully and officially reported. *State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (Sup.Ct. of Wash. en banc 1984), and *State v. Pendelton,* 10 Kan.App.2d 26, 690 P.2d 959 (Kan. Ct.App.1984).[32] Both cases recognized and applied *Ohio v. Roberts'* dual standard to the factual circumstances before each court.

In *Ryan,* the Supreme Court of Washington en banc considered the appeal of a defendant convicted of taking indecent liberties of a four-year-old boy, "M", and a five-year-old boy "J". The out-of-court statements of both boys had been admitted in evidence through the hearsay testimony of M's mother and aunt, and J's mother. (691 P.2d at 201). The *Ryan* court expressly noted that "[b]oth parties stipulated that the boys were incompetent" to testify at trial. (*Id.* at 200).[33]

The *Ryan* court reversed the defendant's conviction on the ground that the trial court's "admission of the statements did not comply with the statute's requirements, and resulted in a denial of defendant's right of confrontation under the sixth amendment to the United States Constitution and Const. art. 1, § 22." [34] (*Id.* at 200).

*Ryan,* in express reliance upon *Ohio v. Roberts'* dual standard, reversed the defendant's conviction for the reason that "[n]either unavailability nor reliability were shown prior to admitting the hearsay testimony." (*Id.* at 202). The Supreme Court of Washington en banc, properly concluded that the "Sixth Amendment requires a demonstration of unavailability when the declarant witness is not produced. *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538" (*id.* at 202).[35]

---

**32.** Judge Ross' request was a most appropriate request. For, as stated in Advisory Committee's "Introductory Note: Confrontation and Due Process" to "Article VIII: Hearsay": "Until very recently, decisions invoking the confrontation clause of the Sixth Amendment were surprisingly few, a fact probably explainable by the former inapplicability of the clause to the states and by the hearsay rule's occupancy of much the same ground." (Fed.R.Evid., p. 303). The Introductory Note added that a substantial change in that situation occurred after 1965 when "the confrontation clause was held applicable to the states" in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

It is therefore appropriate that federal courts of appeal consider the rationale of the increasing number of well-reasoned State appellate court decisions which involve factual circumstances comparable to those in a case that pends on appeal in a federal court of appeals.

**33.** The parties' stipulation in *Ryan* that the boys were incompetent to testify at trial is relevant to this case for the reason that the government's response to Judge Ross' request made a statement, unsupported by anything in the record, that "it was the view of the parties that the four-year-old boy would not have been an effective witness in court if he had been called because he would have been frightened." *See* the government's response at 1.

For purposes of analysis, it may be assumed that the parties in this case entered into a formal stipulation that Maurice was "unavailable" as a trial witness.

**34.** The statute to which reference was made, RCW 9A.44.120, created a new exception to Washington's hearsay rule which the *Ryan* court held "is not within the category of firmly rooted hearsay exceptions." (*Id.* at 202).

The *Ryan* court, however, significantly held that the "requirements for admission under RCW 9A.44.120 comport with the general approach utilized to test hearsay against confrontation guarantees. The statute requires a preliminary determination 'that the time, content, and circumstances of the statement provide sufficient indicia of reliability'. *It requires the child to testify at the proceedings, or to be unavailable, and does not alter the necessary showing of unavailability.*" (Emphasis added). (*Id.* at 202).

Any suggestion that *Ryan* is distinguishable from this case on the ground that *Ryan* considered the State of Washington's hearsay statute as well as the confrontation clause of the Sixth Amendment would obviously be untenable.

**35.** *Ryan* also held that: "[u]navailability *in the constitutional sense* additionally *requires the prosecutor* to make a good faith effort to obtain the witness' presence at trial. *Roberts,* 448 U.S.

*Ryan* rejected the State's argument that the boys should be considered to be "unavailable" within the meaning of *Ohio v. Roberts'* first requirement, based on the ground that the parties had "stipulated that the boys were incompetent." *Ryan* rejected that argument for the reason that it "is clear that children under 10 are not statutorily incompetent" and because "[s]tipulated incompetency based on an erroneous understanding of statutory incompetency is too uncertain a basis to find unavailability." [36] (*Id.* at 203).

In regard to the *Ohio v. Roberts* second requirement of reliability, the *Ryan* court, after detailed examination of the factual circumstance under which the two boys made their out-of-court statements to their mothers, concluded that the "time, content, and circumstances of the statements offered against Ryan do not bear adequate indicia of reliability sufficient to make cross-examination and face-to-face confrontation superfluous." (*Id.* at 206). It is particularly important to note for the purposes of this case that *Ryan* observed that the "trial court was apparently persuaded that the statements of the children must be reliable, *if, in hindsight they prove to be true.*" (Emphasis added). (*Id.* at 204).

For the majority opinion's finding that "the Rule 803(24) requirement of trustworthiness was satisfied in this case" (at 478)

was based on exactly the same theory as that accepted by the trial court in *Ryan*. *Ryan* concluded that the State's hindsight argument was untenable for the obvious reason that "[a]dequate indicia of reliability must be found in reference to circumstances surrounding the making of the out-of-court statement, *and not from subsequent corroboration of the criminal act.*" (Emphasis added). (*Id.* at 204).[37]

In *Pendelton,* the Court of Appeals of Kansas, as did the Supreme Court of Washington in *Ryan,* recognized that it was under duty to follow and apply *Ohio v. Roberts* to the factual circumstance of the case before that court.[38] *Pendelton* was an appeal from a conviction of aggravated indecent solicitation of two boys, "A", aged seven, and "L", aged eleven. The confrontation clause question was presented solely in regard to hearsay testimony of what A, the seven-year-old, had told his mother shortly after the occurrence of the crime for the reason that L, the eleven-year-old boy, was qualified as a trial witness and testified at trial. A's out-of-court statements were admitted through the hearsay testimony of his mother. The hearsay testimony of the mother was admitted pursuant to a relatively new Kansas statute, K.S.A. 60–460(dd)(2), which created a new exception to the Kansas hearsay rule.[39]

at 74, 100 S.Ct. at 2543" and that *"Roberts* recognized that the good faith effort incumbent *on the State* to produce the witness does not require a futile act." (Emphasis added). (*Id.* at 202–203).

**36.** *Ryan* further concluded that "[b]ecause *the State* made no apparent effort to produce the children or to excuse their production, the first of the *Roberts* requirements, production or demonstrated unavailability, is not met." (Emphasis added). (*Id.* at 203).

**37.** It is equally important to note that *Ryan* expressly rejected the State's untenable argument that "the factors used to test reliability in *United States v. Nick,* 604 F.2d 1199 (9th Cir. 1979)," (*id.* at 205) were applicable *to the case* before that court. The majority opinion, of course, cited *Nick* to support its determination of the hearsay issue presented on this appeal. (at 478).

*Ryan* properly concluded that *Nick* was "a very different case" from *Ryan* for the reason

that in *Nick* "the statements fell into two well recognized hearsay exceptions—excited utterances and statements made to a physician for purpose of diagnosis. Fed.R.Evid. 803(a)(2) and (4)" (*id.* at 205). *Ryan* added that the most important distinction is that "the hearsay statements offered in *Nick fell into existing hearsay exceptions grounded in reliability in the circumstances of their making.*" (Emphasis added). (*Id.* at 206).

**38.** *Pendelton* held that: "The use of hearsay against an accused does not violate the confrontation clause when a declarant is unavailable and his statements bear an adequate 'indicia of reliability'. *Ohio v. Roberts,* 448 U.S. 56, 62–66, 100 S.Ct. 2531, 2537–39, 65 L.Ed.2d 597 (1980) [additional citations omitted]." (690 P.2d at 962).

**39.** Further notice need not be given the new Kansas hearsay exception for the reason that the Court of Appeals of Kansas held that the

The trial court in *Pendelton,* in sharp contrast with the procedures followed by the district court in this case, conducted an appropriate pretrial hearing to determine A's availability or unavailability as a trial witness. The Court of Appeals of Kansas was therefore able to state on the basis of the trial court record that the State trial court properly "found, *after a hearing,* that A was *unavailable as a witness* because he could not relate in logical progression the sequence of events or factual situation that gives rise to the issues in the lawsuit." (Emphasis added) (*Id* at 962). That trial court finding, fully supported by the trial court record, was held to satisfy the first requirement of *Ohio v. Roberts'* dual standard.

*Pendelton* thus was required to consider *Ohio v. Roberts'* second requirement of reliability. The *Pendelton* court concluded in that regard that the circumstances under which A had made his out-of-court statements to his mother did, in fact, satisfy "the requirements of the Sixth Amendment" in that an "adequate indicia of reliability" had been established. *Pendelton* concluded that the trial court record established that "the child, at his first opportunity, initiated the conversation, relating the

facts to his mother in a situation completely removed from threats or promises."[40] (*Id.* at 962).

It is thus clear that *Pendelton* appropriately recognized the federal constitutional standards applicable to this case as stated in *Ohio v. Roberts* and did no more than apply those standards to a case which presented radically different procedural and factual circumstances.

### F.

The government complied with Judge Ross' request to comment on *Ryan* and *Pendelton* in a letter dated February 15, 1985. The government's response removes any doubt that throughout the pretrial proceedings, the trial of this case and on the appeal, the government has attempted to maintain the position that defendant Cree's objections to hearsay testimony on confrontation clause grounds present an identical question as that presented by defendant Cree's objections based on hearsay grounds.[41]

The government's February 15, 1985 response made every effort to cloud the fact that both *Ryan* and *Pendelton* were based on constitutional confrontation clause rather than hearsay grounds. For that re-

---

Kansas statute incorporated the confrontation clause requirements of the Sixth Amendment. *Pendelton* stated that the new statutory exception provided for the admission in evidence "of a child victim's statements only if the trial judge 'finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, [and if] the statement is apparently reliable....'" (*Id.* at 962). *Pendelton* held that it could not find that "the statute violates the Constitution on its face" for the reason the "statute itself requires *the trial judge* to make the *two* determinations *required by case law to satisfy the mandate of the Sixth Amendment in the admission of hearsay.*" (Emphasis added). (*Id.* at 962).

Any suggestion that *Pendelton* may be distinguished on the ground the Court of Appeals of Kansas considered the new Kansas hearsay statute as well as the confrontation clause of the Sixth Amendment would obviously be untenable.

**40.** *Pendelton* summarized its analysis of the factual circumstances of the case as established by the trial court record and made clear its applica-

tion of *Ohio v. Roberts'* reliability requirement by stating: "Where a statement is made by a child victim to his parent shortly after the occurrence of the crime, when the victim is still exhibiting signs of being upset by the occurrence, at the first opportunity for such communication; the statement is corroborated by other testimony at trial; and the trial judge has an opportunity to evaluate the trustworthiness of the child victim in a hearing to determine his unavailability as a witness, we cannot find that the admission of the statement violates any of appellant's constitutional rights." (690 P.2d at 965).

**41.** That letter also reflected the government's position, a position fully adopted by the district court, that a determination that Maurice's out-of-court statements, although introduced in evidence through the hearsay testimony of two separate witnesses at entirely different times and under obviously different circumstances, were admissible in evidence under Rule 803(24), and that such a ruling would provide an adequate ground to overrule defendant Cree's confrontation clause objections.

sponse suggested that those two cases did no more than "recognize new statutory exceptions *to the hearsay rule* which facilitate the introduction of out-of-court statements by children in abuse cases." (Emphasis added).[42]

The government's response expressly conceded that the district judge in this case had "based his ruling on Rule 803(24), Federal Rules of Evidence" and argued *"that unavailability of the hearsay declarant was immaterial."* That statement, of course, reflects the position taken by the government at trial, a position fully adopted by the district court, that the constitutional standard for admissibility under the confrontation clause did not require the district court to make any finding of record in regard to the unavailability of the declarant as a trial witness.

The government's response reiterated the untenable position it has attempted to maintain throughout the pretrial proceedings, the trial, and the appeal of this case by flatly stating that both *Ryan* and *Pendelton* "support the proposition that hearsay statements of child witnesses can be admitted *in the face of confrontation objections* when such evidence meets [only] the tests for trustworthiness and reliability." [43] (Emphasis added).

The government's response to Judge Ross' request does not even attempt to state any reason why *Ryan* or *Pendelton* were not properly decided on confrontation clause grounds. Nor does that response attempt to state any reason why the rationale of those two well-reasoned State appellate decisions should not be applied to the factual circumstances of this case.[44]

We turn now to the most recent appellate confrontation clause decision which happens, on its facts, to be by far the closest to facts of this case.

### G.

The most recent State appellate court confrontation clause decision making application of *Ohio v. Roberts'* dual standard is *State v. Campbell,* 705 P.2d 694 (Supreme Court of Oregon In Banc), decided Aug. 20, 1985, (first digested in the October 2, 1985 issue of The Criminal Law Reporter, 38 CrL 2006-07). That case involved a defendant's appeal from a conviction of "two counts of Sodomy in the First Degree based upon a written confession of the defendant and the testimony of the mother of the victim relating to the court the child's statements made later in the same day that the abuse allegedly occurred." (*Id.* at 696).

The relevant factual circumstances in *Campbell* were identical to factual circumstances in this case except that Lucy, the

---

**42.** Further, the government's response failed to state and completely ignored the fact that both *Ryan* and *Pendelton* reflected the applications of *Ohio v. Roberts'* dual standards to the factual circumstances presented in those cases.

**43.** The government's response further argued "that *the evidence* meets the trustworthiness and reliability tests of the law." (Emphasis added). The only "evidence," however, that the government mentioned in its response was a statement that: "The government's position [at trial] was that the child did relate trustworthy information and was a reliable witness when interviewed in the quiet atmosphere of the Human Services Center interview room, when surrounded by toys and when being visited with by a trained and patient social worker (Mrs. Chaussee); however, examination in a courtroom would result in the child being unresponsive." The majority opinion substantially adopted that argument on page 478 of the slip opinion.

The record, of course, shows that the district court never made any determination as to whether Maurice would, in fact, be an "unresponsive" witness and therefore "unavailable" as a trial witness for confrontation clause purposes.

It should further be noted that the government's response did not even mention the name of Agent Hellekson. And certainly that letter did not attempt to argue that Maurice's out-of-court statements to Agent Hellekson were made in the "quiet atmosphere" of any interview room or that Hellekson was a "trained and patient social worker" either before or after he became a FBI agent.

**44.** The only useful purpose the government's response served is that it succinctly exposed for still another time the untenable position that the government has attempted to maintain in regard to the confrontation clause of the Sixth Amendment throughout the entire history of this case.

three-year-old declarant in *Campbell,* was one year younger than Maurice and except for the fact that the record in *Campbell* established that the parties had entered into a formal stipulation and the defendant conceded on appeal that Lucy was "unavailable" as a trial witness. (*Id.* at 705).[45] The *Campbell* court stated that "the *sole* issue on appeal is whether hearsay testimony by the mother of a three-year-old declarant who is the alleged victim of sexual abuse is admissible in evidence." (Emphasis added). (*Id.* at 695).[46]

*Campbell* reversed the defendant's conviction and remanded to the trial court with directions that on new trial, part of the mother's hearsay testimony would be admissible if, but only "if the defendant's confrontation rights are satisfied" on the second trial of the case. (*Id.* at 696). *Campbell* based its decision on both Article I, section 11, of the Oregon Constitution, which provides that a defendant in a criminal prosecution has the right "to meet the witnesses face to face," and the confrontation clause of the Sixth Amendment. *Campbell* concluded that because it must "decide state constitutional claims before federal constitutional issues are addressed" it was first required to determine whether the defendant's "right to meet the witnesses face to face" as guaranteed by the Oregon Constitution had been violated.

*Campbell,* however, made clear that: "In reaching this result on independent and separate state grounds under Article I, section 11, of the Oregon Constitution, *we nevertheless adopt the reasoning of the Supreme Court of the United States* in determining what constitutes *unavailability* of a hearsay declarant and what constitutes *adequate indicia of reliability* of hearsay declarations to satisfy our state constitutional confrontation clause." (Emphasis added). (*Id.* at 703). It is thus clear that the Supreme Court of Oregon recognized and applied federal confrontation standards to the sole issue presented on appeal in that case.

The Supreme Court of Oregon, in banc, held, under factual circumstances infinitely more favorable to the prosecution than those presented in this case, that the defendant's confrontation rights had been violated. *Campbell* accurately recognized that there "are no United States Supreme Court cases dealing with confrontation where children's hearsay statements have been introduced against a criminal defendant." (*Id.* at 703). *Campbell,* however, properly concluded that "the relationship between the confrontation clause and the exceptions to the rule against hearsay was addressed by the Supreme Court of the United States in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)." (*Id.* at 703).[47]

**45.** The relevant factual circumstances in *Campbell* were also different from those involved in this case in that in *Campbell,* unlike this case, the defendant had voluntarily signed a written confession of his guilt and, again unlike this case, the declarant's out-of-court statements to her mother were made less than an hour after the mother returned home from work at 5:00 p.m. and only a few hours after the defendant's confession stated that he had committed the crime at 11:00 a.m. the same day. (*Id.* at 696 and 697). Maurice's out-of-court statements made to Chaussee and Agent Hellekson's were, of course, made during the course of a criminal investigation that was being conducted days after the time the offense charged in the indictment was alleged to have occurred.

**46.** Under Oregon law a defendant may not be convicted on his written confession unless it can be said that additional evidence corroborates

the defendant's confession. *Campbell* recognized that the hearsay testimony of the mother, if admissible, would certainly be "sufficient to corroborate the confession of the defendant." (*Id.* at 703). Thus the reason for the Supreme Court of Oregon's statement of the *sole* issue on appeal as quoted in the text.

**47.** *Campbell* summarized *Ohio v. Roberts'* dual standard by stating that:

In *Ohio v. Roberts, supra,* the United States Supreme Court established a two-part test for determining whether admission of out-of-court statements of a witness who does not testify at trial satisfies the defendant's right to confrontation. First, the declarant must be unavailable and, second, the declarant's out-of-court statements must have "adequate indicia of reliability."

(*Id.* at 703).

*Campbell* first focused on the question of whether the trial court record in that case supported the requisite finding that the three-year-old declarant was "unavailable" as a trial witness. *Campbell* expressly rejected the prosecution's argument that "unavailability" had been established by the formal stipulation of the parties, holding that "the question of unavailability of a hearsay declarant supposedly due to incompetency should not be left to the advocates in a criminal trial." (*Id.* at 705). The Supreme Court of Oregon cited, quoted from at length, and stated its agreement with the Supreme Court of Washington's decision in *Ryan.* *Campbell* held that:

> If the court is going to admit hearsay statements against a defendant to satisfy the confrontation rights of an accused, *the court* must ensure the declarant is *in fact* unavailable. *The prosecution has the burden to produce the potential witness for the competency hearing. The defendant has no burden to prove unavailability.* (Emphasis added).

(*Id.* at 705).

The record in this case shows that the United States Attorney stated to the district court during the motion in limine proceeding, in obvious anticipation that the district court would conduct the pretrial hearing the government had requested to determine Maurice's availability as a witness, that "I think *the experts* will tell us" that "children of these tender years may not even be able to fabricate a story." [48] (Motion in limine Tr. p. 15). *Campbell,* however, concluded that no one, particularly a trial court in the trial of a criminal case, could indulge in any assumption as to whether a particular three-year-old child would or would not be able to tell the truth if called as a trial witness.

The *Campbell* court stated that it was "aware that many three-year-olds are found to be incompetent after close evaluation by judges conducting trials." (*Id.* at 706). *Campbell,* however, added that it was also aware that "many children of tender years make remarkably credible witnesses for either the prosecution or the defense in a criminal trial." (*Id.* at 706). *Campbell* accordingly held that because "there is so much variance among children, we believe only the trial judge can make a ruling on competency." (*Id.* at 706). *Campbell* therefore stated that:

> We hold, therefore, that before any out-of-court declaration of any available living witness may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court to satisfy either Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution.[49]

**48.** The United States Attorney also told the district court that "I think all of us who have children know that generally children of these tender years do not have a purpose of telling an untruth." (*Id.* at 15). As a father of four and a grandfather of five, I can only say that the United States Attorney is indeed a fortunate man.

All such speculation to one side, the record in this case shows that the district court never heard any *expert* testimony in regard to whether Maurice was able to tell the truth either as a trial witness or at the time and under the circumstance he made his out-of-court statements to either Chaussee or to Agent Hellekson.

**49.** *Campbell,* of course, concluded that because "[t]his ruling on competency was not undertaken in this case ... the case must be reversed and remanded to the trial court for such a determination. (*Id.* at 706). *Campbell* was of the view that the pretrial hearing on the child's availability should, on remand, be conducted by

the trial court under OEC 804(1) which is an exact equivalent of federal Rule 804(1).

It should also be noted in passing that *Campbell* also stated that federal Rule 803(24) and 804(b)(5) "are equivalent to OEC 803(24) and OEC 804(3)(f), respectively," (*id.* at 698). On the hearsay issue presented, *Campbell* held that the mother's hearsay testimony in that case was not admissible under the residual clause of the equivalent Oregon rule of evidence.

*Campbell* expressly relied on the legislative history of federal Rule 803(24) and upon the conclusion stated in *United States v. Mathis,* 559 F.2d 294, 299 (5th Cir.1977), which stated that "tight reins must be held to insure that [FRE 803(24)] does not emasculate our well developed body of law and the notions underlying our evidentiary rules." (*Id.* at 698 n. 4).

The Eighth Circuit rule in regard to how Rule 803(24) must be applied is consistent with *Mathis,* as I will develop in the next part of this dissenting opinion.

498

For the reasons stated, I believe that this case should be reversed and remanded on the Sixth Amendment confrontation clause grounds, with directions that the district court·proceed on a new trial in accordance with what I have stated in this dissenting opinion.

I turn now to how I believe the panel should have decided the hearsay issue presented and why I dissent from the majority opinion's determination of the merits of that question.

## V.

### A.

I dissent from the majority opinion's decision on the merits of the hearsay issue presented on appeal. For that decision, in my view, is directly contrary to how controlling Eighth Circuit cases have held the residual clause of Rule 803(24) must be construed and applied. I believe that those Eighth Circuit cases must be followed in all panel opinions until and unless those cases

are overruled by the Court of Appeals, sitting en banc.

*United States v. Carlson,* 547 F.2d 1346, 1353, n. 3, (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), held that "[b]asically, the same standards and·evidentiary principles apply under Rule 803(24) and Rule 804(b)(5)." And *United States v. Love,* 592 F.2d 1022, 1026 (8th Cir.1979), held that the "history of Rule 804(b)(5) and its counterpart, Rule 803(24), indicates that Congress did not intend to create a broad new hearsay exception" and that "intent of Congress was that Rule 804(b)(5) would be used very rarely, and only in exceptional circumstances." [50]

*United States v. Helmel,* 769 F.2d 1306 (8th Cir.1985), is the most recent reflection of the Eighth Circuit's consistent reluctance to stretch Rule 803(24) beyond its limited purpose. *Helmel* reiterated the Eighth Circuit rule that the residual clause of Rule 803(24) "should be used very rarely, and only in exceptional circumstances," citing *United States v. Love, supra.* (769 F.2d at 1306, n. 12.).[51]

50. As earlier noted, the Department of Justice memorandum filed with the district court directed attention to *Love. Love's* "very rarely, and only in exceptional circumstances" language, quoted most recently with approval in *Helmel,* was obviously taken directly from the Notes of Committee on the Judiciary, Senate Report No. 93–1277, U.S.Code Cong. & Admin.News 1974, p. 7051. For after those Notes stated that "[i]t is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances", it added that:

The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). *The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule,* including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule. (Emphasis added).

(Fed.R.Evid. at 321).

It is my view that both the district court and the majority opinion attempted to make "major

judicial revisions of the hearsay rule" by their efforts to establish a new child witness exception to the hearsay rule under the residual clause of Rule 803(24) that has never been heretofore recognized by any court in order to support their determination that the hearsay testimony of Chaussee and Agent Hellekson was admissible in evidence.

51. While *Helmel* concluded that "any violation of the confrontation clause does not require reversal in the particular circumstances of this case," the reading given *Ohio v. Roberts* by the *Helmel* court is consistent with how I have stated the confrontation clause question presented in this case should be ruled. For *Helmel* held that: "Where the declarant is not present for cross-examination at trial, *the government bears the burden of proof* to show (1) that the declarant was 'unavailable,' and (2) that the statement bears sufficient indicia of reliability. *Roberts,* 448 U.S. at 65 [100 S.Ct. at 2538]." citing *Massa,* 740 F.2d at 639. (Emphasis added).

In significant addition, it should be further noted that the cases and the law review notes cited in footnote 13 of *Helmel* fully support the statement made in that case that *Massa* "indicated that these two requirements [as stated in *Ohio v. Roberts* ] must be satisfied *even when the hearsay is admissible"* under a firmly rooted exception to the hearsay rule. (Emphasis added).

It is my view that the controlling Eighth Circuit cases mandate that Rule 803(24) be construed to require a district court to make express findings of record, supported by the record in a particular case, that a declarant's out-of-court statements were made at a time and at a place and under such exceptional circumstances that can be said to satisfy (1) the "circumstantial guarantees of trustworthiness" requirement of Rule 803(24) and (2) satisfy the further requirement of that rule that those guarantees are "equivalent" to the guarantees of trustworthiness upon which the traditional and firmly rooted hearsay exceptions codified in Rule 803(1) to (23) are based.

I would accordingly hold that the district court's admission of the hearsay testimony of Chaussee and Agent Hellekson under the residual clause of Rule 803(24), without conducting any appropriate hearing and without making any explicit findings of record in regard to whether the circumstances under which Maurice made his out-of-court statements to two different witnesses under totally different factual circumstances, in fact, satisfied the dual "equivalent circumstantial guarantees of trustworthiness" standard of Rule 803(24), requires this case to be reversed and remanded for a new trial.[52]

**B.**

The majority opinion fails even to mention, much less discuss, Rule 803(24)'s express condition that the "circumstantial guarantees of trustworthiness" of any new hearsay exception to be recognized under that residual clause must be *"equivalent"* to those on which the firmly rooted exceptions codified in Rule 803(1) to (23) have been held to rest.[53] The majority opinion, however, states on its page 8 that after it had "carefully reviewed the record, we conclude that the Rule 803(24) requirement of *trustworthiness* was satisfied in this case." (Emphasis added). It is my view that there are two things wrong with that statement. First, as I have just noted, Rule 803(24) does not have a single "trustworthiness" requirement.

Second, the majority opinion's "review of the record" did not make reference to any evidence in the record which in any way related to the circumstances under which Maurice made his out-of-court statements to either Chaussee or Agent Hellekson. The record establishes Maurice made his out-of-court statements to those two witnesses at different times and different places and under totally different circumstances.

The record, in my view, simply cannot be said to support the majority opinion's assumption of fact that all of Maurice's out-of-court statements that were admitted in evidence were made under circumstances that can be said to satisfy Rule 803(24)'s *"equivalent* circumstantial guarantees of trustworthiness" dual standard. For the record in this case, as I read it, simply does not contain any substantial relevant evidence that even relates to the questions

---

**52.** The government does not argue and neither the district court nor the majority opinion suggests that Maurice's out-of-court statements to either Chaussee or to Agent Hellekson could be said to have been made under circumstances which fall within "some firmly rooted hearsay exception" from which, according to *Ohio v. Roberts,* "reliability can be inferred without more." (448 U.S. at 66, 100 S.Ct. at 2539).

**53.** Indeed, the majority opinion attempts to avoid the necessity for any discussion of the "equivalent" requirement of Rule 803(24) by its adoption, by way of quotation, of a statement from *Moffett v. McCauley,* 724 F.2d 581, 583 (7th Cir.1984), which stated, in grossly abbreviated language, that the first of the "five requirements

for admission under Rule 803(24) [is] (1) trustworthiness. . . ." (at 477).

The first of the five requirements of Rule 803(24) simply does not state a "trustworthiness" standard; the first requirement of Rule 803(24) expressly states a dual standard that the "circumstantial guarantees of trustworthiness" necessary to support a new exception to the hearsay rule must also be "equivalent" to those guarantees that have traditionally been held to support the firmly rooted exceptions codified in Rule 803(1) to 803(23). The majority opinion's quotation of a single sentence from the Seventh Circuit case of *Moffett v. McCauley* cannot, in my view, eliminate the "equivalent" condition stated in Rule 803(24).

upon which the satisfaction of Rule 803(24)'s dual standard could be based.

### C.

The majority opinion's assumption that the "equivalent circumstantial guarantees of trustworthiness" findings required by Rule 803(24) may be based on evidence which might be said to corroborate the commission of the crime is unsupported by and contrary to every case that has considered that question. There can be no question, however, that the majority opinion is based on that assumption. For on page 7 the majority opinion makes detailed reference to "objective medical evidence of Maurice's physical condition"; to "the expert testimony of two physicians"; to the testimony of the "two school officials"; and to "Maurice's age" as factors which the majority opinion stated would support its conclusion that "the Rule 803(24) requirement of trustworthiness was satisifed in this case." (at 477–478).

The record shows that the district court never made any findings in regard to the first requirement of Rule 803(24). Indeed, the district court did not even intimate that it based its Rule 803(24) rulings on any of the factual circumstances stated in the majority opinion. All of the "corrobative" factors relied upon by the majority opinion to support its ultimate Rule 803(24) "trustworthiness" conclusion relate to circumstances other than the factual circumstances under which Maurice made his out-of-court statements to Chaussee and Agent Hellekson. None of the cases or legal authority cited in the majority opinion support its Rule 803(24) decision.

The majority opinion, in my view, fails to recognize and apply the established Eighth Circuit rule, stated most recently in *Helmel*, that the residual clause of Rule 803(24) should only be "used very rarely, and only in exceptional circumstances." (769 F.2d at 1306, n. 12). The circumstances of this case cannot, in my judgment, be considered to be "exceptional" within the meaning of the Eighth Circuit rule simply because the declarant in this case was a child witness. All child abuse cases necessarily involve child witnesses. And, as the child abuse cases cited in this dissenting opinion demonstrate, no appellate court has ever considered that a child abuse case is the type of "rare" case in which a new and heretofore unrecognized exception to the hearsay rule should be created. In short, it is my view that the majority opinion's creation of a new child witness exception to the hearsay rule under the residual clause of Rule 803(24) is in conflict with established Eighth Circuit rule of decision.

I turn now to the cases cited and relied upon by the majority opinion.

### VI.

#### A.

The majority opinion cites only five cases, a few pages of *Weinstein's Evidence,* and one law review article to support its decision that a new child witness exception to the hearsay rule should be recognized under the residual clause of Rule 803(24). I do not believe that any of the cited legal authority can be said to support the majority opinion's decision of the hearsay issue presented on this appeal.

The majority opinion commences part I on page 476 of its opinion with a full quotation of Rule 803(24). In support of its decision that a new child witness exception should be recognized under that rule, the majority opinion then quoted a sentence from the Seventh Circuit case of *Moffett v. McCauley,* 724 F.2d 581, 583 (7th Cir.1984), then made a general citation to nine pages of *Weinstein's Evidence,* and added a short quotation from the Ninth Circuit case of *United States v. Friedman,* 593 F.2d 109, 118 (9th Cir.1979). Neither of the two cases cited, both decided by other circuits, in my view, support the majority opinion's construction and application of Rule 803(24).[54] Nor do the cited pages of *Wein-*

---

54. *Moffett v. McCauley* involved a Section 1983 civil action. That case did no more than affirm the district court's refusal to admit into evidence a prison investigation report containing

*stein's Evidence*, ¶ 804(24)[01] at 803–372 to 381 (1984), support the majority opinion's construction and application of Rule 803(24). Indeed, those pages of *Weinstein's Evidence* accurately set forth the standards that must be recognized and applied by a district court in ruling a Rule 803(24) residual clause question and support this dissent rather than the majority opinion.

*Weinstein's Evidence* states on page 803–373 that: "Rule 803(24) requires *five findings by the trial court.* They should be made *explicitly on the record,* unless there is a waiver explicitly, or by silence, or the basis for the ruling is obvious." (Emphasis added). Chief Judge Weinstein further stated that the first of the five required findings that the district court must explicitly make on the record is a finding that "1) The statement must have **'circumstantial guarantees of trustworthiness'** 'equivalent' to those in Rules 803(1) to (23)." (Emphasis added).[55]

The majority opinion on page 478 of its opinion cited or directed attention to three additional cases and one law review article to support its decision that a new child witness exception should be recognized under the residual clause of Rule 803(24): *Roberts v. Hollocher,* 664 F.2d 200, 205 (8th Cir.1981); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick,* 604 F.2d 1199 (9th Cir.1979); and Parker, *The Rights of Child Witnesses: Is the Court a Protector or Perpetrator?,* 17 New Eng.L. Rev. 643 (1982).

I cannot find anything in any of those cited cases that can be said to support the majority opinion's Rule 803(24) ruling. On the contrary, I find a great deal of what is said in those cases that supports an entirely different view in regard to how the majority opinion should have ruled both the hearsay issue and the confrontation clause issue presented on appeal in this case.

*Roberts v. Hollocher, supra,* the first of only two Eighth Circuit cases cited by the majority opinion, was a Section 1983 civil action for damages. That case did not mention Rule 803(24). It simply held that while hospital records are generally admissible under the firmly rooted hearsay exception codified in Rule 803(4), any statement regarding fault contained in such a record did not fall within the scope of the exception stated in that rule.

Nor was Rule 803(24) mentioned in *United States v. Iron Shell, supra,* the second Eighth Circuit case cited in the majority opinion. *Iron Shell* involved an appeal from a jury conviction of assault with intent to commit rape of a nine-year-old Indian girl. That case, like *Roberts v. Hollocher,* did not present a Rule 803(24) question.

Rather, *Iron Shell* presented questions (1) under the firmly rooted exceptions to the hearsay rule which are codified in Rule 803(4) (statements for purposes of medical diagnosis or treatment) and (2) under the equally firmly rooted exception codified in Rule 803(2) (a statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condi-

an account of the strip search. *United States v. Friedman* did no more than state the Ninth Circuit's standard in regard to the scope of appellate review of a district court's determination of a question concerning the admissibility of evidence. The Eighth Circuit has stated the same rule in many cases.

The failure, however, of a district court to exclude evidence which is inadmissible under both the Rules of Evidence and under the confrontation clause of the Sixth Amendment, is not a matter that may properly be considered to be within the exercise of the discretion of a

district court. For all district courts and all courts of appeal are under duty to apply the Rules of Evidence and the confrontation clause in accordance with the decisions of the Supreme Court and the controlling decisions of the various circuits.

55. As noted above, the record in this case establishes that no such explicit finding was made on the record by the district court. The majority opinion does not recognize that Rule 803(24) requires the district court to make such an explicit finding.

tion).[56] *Iron Shell*, like this case, also presented a confrontation clause question. *Iron Shell*, however, quite unlike this case, did not present any factual question in regard to the identity of the person charged with having committed the assault.[57]

The fact that the Eighth Circuit in *Iron Shell* affirmed the district court's rulings admitting the hearsay testimony of two witnesses in evidence under Rule 803(4) and Rule 803(2) in a case in which the declarant happened to be a nine-year-old Indian girl cannot, in my judgment, be said to support the majority opinion's conclusion that a new and heretofore unrecognized child witness exception to the hearsay rule should now be recognized under the residual clause of Rule 803(24) in a case in which the declarant happened to be a four-year-old Indian boy.

Both the majority opinion and *Iron Shell* cited the Ninth Circuit case of *United States v. Nick, supra. Iron Shell*, however, quite unlike the majority opinion, cited *Nick* in connection both with the hearsay questions and the confrontation clause issues presented in that case.[58]  Defendant's appeal in *Nick* was from his conviction for sexually assaulting a three-year-old Indian boy. The defendant in *Nick* con-

tended on appeal, like defendant Cree claimed on her appeal in this case, that the district court erred "in admitting, over hearsay and confrontation clause objections, damaging statements of the victim reported in the testimony of the child's mother and his physician." (604 F.2d at 1200–1201).[59]  In regard to the hearsay issue *Nick* held that all five of the findings required by the residual clause of Rule 803(24) should be considered at a pretrial hearing to be conducted by the district court out of the presence of the jury.[60]

On the reliability issue presented in that case, *Nick* held that the out-of-court statements made by the child to the examining doctor and to his mother shortly after the assault were properly admitted in evidence under the firmly rooted exceptions to the hearsay rule codified in Rules 803(4) and 803(2).[61]

*Nick*, as I read that case, cannot be said to support the majority opinion's view that both Chaussee's and Agent Hellekson's hearsay testimony was properly admitted in evidence under the residual clause of Rule 803(24). For that case did not hold, as the Supreme Court of Oregon in *Campbell* recognized, that the hearsay testimony was

---

**56.** The Rule 803(2) question was presented in regard to the admissibility of Officer Marshall's hearsay testimony in regard to what Lucy, the victim, told him in response to a single question he asked the child shortly after the assault occurred.  The Rule 803(4) question was presented in regard to the admissibility of Dr. Hopkins' hearsay testimony as to what·Lucy told him concerning the cause of her injuries in response to questions asked at the time the doctor examined Lucy within two hours after the assault.

**57.**  For the *Iron Shell* court stated at the outset of its opinion that the "defense conceded at trial that Iron Shell had assaulted Lucy, a nine-year-old Indian girl" and that the "key questions at trial concerned the nature of the assault and the defendant's intent."  (633 F.2d at 80).

**58.**  The majority opinion merely cited, but did not discuss *Nick* other than to say, without explanation, that *Nick* was in "accord" with *Iron Shell*.

**59.**  *Nick* also involved a *Miranda* question that can be put to one side for purposes of this case.

For the *Nick* court concluded, under the command of an earlier Ninth Circuit case, that the defendant's *Miranda* rights had not been violated and that his confession to the crime was properly admitted in evidence.

**60.**  The *Nick* court concluded in that regard that: "In a jury case, the district court, outside the presence of the jury, should test the proffered declaration against these criteria" and that "only after it is satisfied that these high standards have been met, should the court permit the introduction of the hearsay statement." (*Id.* at 1203, n. 2).

**61.**  It is to be further noted in regard to *Nick* that the child's declarations to the physician admitted under Rule 803(4) were limited by the district court to what the child said to the physician in regard to the cause of his injury.  As stated in *Nick:* "[T]he physician was permitted to testify *only* to those portions of the child's statements that were relevant to the cause of the injury, *omitting the identity of the assailant."* (Emphasis added). (*Id.* at 1201–1202).

admissible under the residual clause of Rule 803(24).

It is my considered view that recognition and application of the principles stated in *Nick* in regard to both the hearsay and confrontation clause issues to the factual circumstances of this case, requires the reversal and remand of this case.

I believe it appropriate to add that, although *Nick*'s per curiam opinion was written over a year before the Supreme Court decided *Ohio v. Roberts*, the Ninth Circuit correctly anticipated the "indicia of reliability" standard that the Supreme Court eventually adopted in *Ohio v. Roberts*. *Nick* also anticipated *Ohio v. Roberts'* conclusion that if a declarant's out-of-court statement "falls within a firmly rooted hearsay exception ... its reliability can be inferred without more" and that the admission of the declarant's statement in evidence through the hearsay testimony of another witness would not violate either the hearsay rule or the confrontation clause.

In light of the majority opinion's citation and apparent reliance on *Nick*, it is appropriate that I discuss *Nick*'s analysis of the relationship between the hearsay rule and the confrontation clause of the Sixth Amendment in some detail. I turn now to *Nick*'s discussion of that relationship.

### B.

*Nick*, although decided before *Ohio v. Roberts*, appropriately recognized that a district court ruling that a declarant's out-of-court statement was admissible in evidence as an exception to the hearsay rule does not decide the question of whether the admission of the same hearsay statement in evidence might violate a defendant's Sixth Amendment confrontation right in a criminal case.[62]

*Nick*'s analysis of the close relationship between the reliability criteria required under the confrontation clause and the "equivalent circumstantial guarantees of trustworthiness" reliability criteria required under Rule 803(24) supports the analysis I have made of the same subject in this dissenting opinion. For *Nick* made reference to Rule 803(24) only for the purpose of suggesting that the "equivalent circumstantial guarantee of trustworthiness" reliability criteria set forth as the first of the five findings required by the residual clause of that rule may be said to provide "a useful set of criteria to be used not only in weighing the admissibility of the evidence for hearsay rule purposes, *but also for the purposes of the confrontation clause....*" (Emphasis added). 604 F.2d at 1203.[63]

*Ohio v. Roberts* later made clear that the admissibility of hearsay testimony under a firmly rooted exception to the hearsay rule normally establishes reliability for confrontation purposes, without more. *Ohio v. Roberts* also later made clear that in all other cases, i.e., cases which did *not* involve firmly rooted exceptions to the hearsay rule, the out-of-court statements of an unavailable declarant are not admissible unless those statements were made under circumstances that could be said to carry an "indicia of reliability."

*Ohio v. Roberts* thus confirmed *Nick*'s analysis that evidence that could be said to satisfy Rule 803(24)'s "equivalent circumstantial guarantees of trustworthiness" standard would, in other than the most exceptional circumstances, also satisfy the reliability standard of the confrontation

62. *Nick* appropriately quoted the following in that regard from *California v. Green*, 399 U.S. at 155, 90 S.Ct. at 1933: "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than á codification of the rules of hearsay and their exceptions as they existed historically at common law." (604 F.2d at 1202).

63. *Nick*'s application of reliability criteria for purposes of both Rule 803(24) and for confrontation purposes to the particular factual circumstances presented in that case, of course, involved a set of factual circumstances that were radically different than those presented in this case.

clause which *Ohio v. Roberts* would later define as its "indicia of reliability" standard. And, by the same token, I believe that it must logically be inferred that evidence that fails to satisfy Rule 803(24)'s reliability requirement must also be said to fail to satisfy *Ohio v. Roberts's* "indicia of reliability" requirement. It also seems to me that the converse of that proposition must be logically inferred.

It is therefore my view that appropriate application of the rationale of *Nick,* even though that case was decided before *Ohio v. Roberts,* requires this case be reversed and remanded for a new trial on both hearsay and confrontation grounds.[64] For it is my view that the record in this case cannot support the requisite factual predicate for admission of either Chaussee's or Agent Hellekson's hearsay testimony under the reliability standards of either Rule 803(24) or the confrontation clause.

I turn now to the last legal authority cited by the majority opinion in support of its Rule 803(24) decision.

### C.

The majority opinion made a general citation to Parker, *The Rights of Child Witnesses: Is the Court A Protector or Perpetrator?,* 17 New Eng.L.Rev. 643 (1982), on page 478 of its opinion to support its suggestion that the "propriety of requiring extremely young victims of abuse to take the stand as the only method for putting before the jury what is, in all probability, the only first-hand account of the circumstances of abuse other than that of the defendant is debatable." (at 478).[65]

Professor Parker's article, in my view, does not support the majority opinion's recognition of a new child witness exception to the hearsay rule under the residual clause of Rule 803(24).[66]

The majority opinion stated on page 478 of its opinion immediately after its citation of Professor Parker's article that: "In a more relaxed environment, the child in this case was able to provide his version of the relevant events and yet avoid a potentially traumatic courtroom encounter." The record in this case establishes that Maurice was able to "avoid a potentially traumatic courtroom encounter" for the reason his "version of the relevant events" was admitted in evidence through the hearsay testi-

---

**64.** In its post-*Ohio v. Roberts* cases the Ninth Circuit has read *United States v. Nick's* treatment of Rule 803(24) in the same manner as above stated. *See United States v. Perez,* 658 F.2d 654, 661 n. 6 (9th Cir.1981), in which the Ninth Circuit held that *Nick* did no more than utilize "rule 803(24) as a convenient supplementary guidepost to confrontation clause analysis without promulgating it as a test of general application." *See also Barker v. Morris,* 761 F.2d 1396, 1400 (9th Cir.1985), in which the Ninth Circuit held that the *Nick* court had merely used Rule 803(24) "as a guide to satisfaction of the Confrontation Clause." *And see* further the Ninth Circuit's treatment of *Nick* in *United States v. Fielding,* 630 F.2d 1357 (9th Cir.1980), which is discussed in more detail in another part of this opinion.

The Ninth Circuit's reading of *Nick* is, of course, inconsistent with the majority opinion's implicit assumption that *Nick* somehow supports its conclusion that Maurice's out-of-court statements were admissible under Rule 803(24).

**65.** Although Professor Parker's article was not cited, a somewhat similar suggestion was made on page 478 n. 7 of the majority opinion where it was stated that "special concerns arising in

the prosecution of child abuse cases have not fully been met by the development of new methods of practice" and that "the rights of defenseless child abuse victims must be protected."

**66.** Professor Parker wrote her article, as I read it, in support of a proposed Model Act which she believed the various State legislatures should enact, to be known and cited as the "Child Witness Protection Act of 19__." That Model Act, designed to protect a child witness from "victimization in the courtroom," (*id.* at 643) recommended that State legislation be passed to vest State trial courts with substantially the same power to authorize the taking of a videotaped deposition as Rule 15 of the Federal Rules of Criminal Procedure has long vested in a federal trial court.

Professor Parker also recommended that State trial courts be vested with power to appoint a guardian and counsel to represent a child in both civil and criminal cases. A federal district court is already vested with and, when appropriate, has exercised such power and jurisdiction. Federal district courts, for example, almost routinely appoint a guardian and counsel to represent and protect a child's interest in land condemnation cases.

mony of Chaussee and Agent Hellekson over defendant Cree's objection based on both hearsay and confrontation grounds. The record, of course, establishes that neither the United States Attorney nor the district court had anything to do with the circumstances under which Maurice made his out-of-court statements to those witnesses. For Maurice made his out-of-court statements during the course of a criminal investigation.

While it might be said that there may be a modicum of evidence in the record in regard to the circumstances under which Maurice made his out-of-court statements to Chaussee, there certainly is nothing in the record to support a finding that he made his out-of-court statements to Agent Hellekson in some sort of a "relaxed environment." [67]

Finally in regard to Professor Parker's article, it must be noted that the record in this case establishes that Maurice's out-of-court statements to Chaussee and Agent Hellekson were obtained in secret in the course of a criminal investigation. Professor Parker's statement on pages 695–96 of her article makes clear her view that: "There is no doubt that it would be unconstitutional for the state to take evidence in secret and outside the defendant's presence, . . . ." [68] It is my view that it is one thing for a court to suggest that the rights of a child abuse victim should be recognized and protected. It is my view, however, that it is quite a different thing for a court to refuse to consider the rights guaranteed a defendant under both the hearsay rule and the confrontation clause of the Sixth Amendment.

The Supreme Court of Wisconsin, in its recent and thoughtful decision in *State v. Gilbert*, 326 N.W.2d 744 (Sup.Ct. of Wisc. 1982), cited Professor Parker's article and identified her as the commentator who had observed that "it becomes tragically ironic when the legal system, acting as the child protector of last resort, becomes a perpetrator of child abuse." [69] (*Id.* at 752). The

---

67. In further regard to Chaussee, the record establishes that BIA criminal investigator Morsette, without any knowledge or suggestion on the part of the United States Attorney, was responsible for having Chaussee conduct Maurice's three videotaped interviews in the first place; that the United States Attorney later assured the district court that Morsette "will testify at trial [that] the reason he did that [was] because he didn't feel competent to interview a four-year-old child" (motion in limine tr. at 15); that Morsette, however, was, in fact, present and actually participated in the interrogation of Maurice, together with Chaussee; and that Morsette, although listed as a prosecution witness, was not called as a trial witness.

I believe that it is obvious that Morsette, had he been called as a witness at an appropriate preliminary hearing, could have thrown a great deal of light on whether *all* the available evidence in regard to the circumstances under which Maurice made his out-of-court statements to Chaussee would have supported an explicit and necessary finding by the district court that the government had, in fact, satisfied the first of the five reliability requirements of Rule 803(24).

I would include in the remand order that I believe should be entered in this case, directions that would require that Morsette be called as a witness at a preliminary hearing to determine the admissibility of Chaussee's hearsay testimony on new trial.

68. Any doubt about Professor Parker's view of the principles of law that should be applied to this case is removed by her statement at the very outset of her article in which she recognized that a defendant in a criminal case "is protected by the sixth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment." She there cited and quoted *Barber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968), in a footnote to support her further recognition that under the Sixth Amendment a defendant "has the right to cross-examine any witness who testifies against him, . . . ." (*Id.* at 644).

69. *State v. Gilbert* presented the question of whether the trial court erred in quashing a subpoena which required a ten-year-old child victim (BP) to testify against her mother at preliminary examination of a complaint charging the mother with the murder of her youngest daughter, with arson, and with child abuse of both her ten-year-old and the younger daughter. The trial court granted a motion filed by the child's court-appointed guardian on the ground that "it would probably do great damage to BP if she were required to testify". (326 N.W.2d at 746). *Gilbert* fully recognized that "[n]o sensitive person can read about child abuse without feeling anguish for the abused child or without understanding a child's needs and wishes to avoid confronting and accusing the alleged abuser in criminal proceedings, especially if the abuser is a close relative of the child." (*Id.* at 746).

first sentence of the majority opinion implicitly expressed a similar concern when it stated that: "This *disturbing* case involves the physical abuse of two young boys, Maurice Alberts, age four, and Phillip Alberts, age two." (Emphasis added). The majority opinion returned to that theme in footnote 7 on page 478 when it suggested that the "special concerns arising in the prosecution of child abuse cases have not fully been met by the development of new methods of practice."

I do not disagree with the Supreme Court of Wisconsin's citation of Professor Parker's article or its adoption of that article's observation. Nor do I disagree with the majority opinion's description of this case as a "disturbing" case on its facts. To say that, however, is not to say that the district court did not err when it, in a case that may properly be described as "disturbing", admitted Chaussee's and Agent Hellekson's hearsay testimony in evidence over defendant Cree's objections based on both hearsay and confrontation clause grounds. I believe that it did for the reasons I have stated.

I therefore respectfully dissent from the majority opinion for all of the reasons stated.

*Gilbert,* however, reversed the trial court for the reason "the public has a right to every person's evidence," citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and for the reason that no court has power to grant a "child the privilege of refusing to be a witness on the ground of emotional harm." (*Id.* at 746–749).

*Gilbert* properly noted that "[c]ourts have fashioned rules to protect children, scrupulously taking into consideration both the traumatic effect on the child of testifying, of facing the defendant, and of being subject to cross-examination, and the accused's constitutional right to confront witnesses." *Gilbert* concluded that, on remand, the trial "court should afford the child witness in a criminal proceeding as much protection as is consistent with public interest in convicting the guilty and with the constitutional rights of the accused." (*Id.* at 751–752).

For the guidance of the trial court on remand, *Gilbert* appropriately directed attention by way of analogy, to Rule 15, Fed.R.Civ.P., as one of the rules that courts have fashioned to solve "the problem of taking the testimony of the child victim-witness" (*id.* at 752) by its citation of *United States v. Fromme,* 405 F.Supp. 578, 583 (E.D.Cal.1975), in which a Rule 15 videotaped deposition of President Ford was authorized for use in an attempted assassination of the President trial.

I know of no reason why, on remand, a Rule 15 videotaped deposition of Maurice may not be authorized for use at a second trial, provided that the district court, after appropriate pretrial hearing makes findings on the record (1) that Maurice is, in fact, a competent witness, (2) that "exceptional circumstances," do, in fact, exist in the case within the meaning of Rule 15, and (3) the district court's Rule 15 order complies with the standards most recently stated in *Terrazas-Montano.*